# Metzler *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Grade crossing—Permissive crossing,—Evidence.*

A railroad company laid its tracks longitudinally in the center of a street in a populous portion of a city. At a point in this street it erected and maintained a station with platforms on both sides of the tracks. Railings ran along the back of each platform, separating the platform from the street. At a point where a side street opened into the street on which the railroad was built, an opening was made in both railings and the platforms were depressed to the level of the street. Through this opening the public was permitted to pass for a long period of years without any notice restricting the right of passage to passengers only. A boy between nine and ten years old approached the opening, and without stopping proceeded to go over the crossing. A standing train prevented him seeing anything on the second track, and as he stepped upon the second track he was struck by an engine of an express train and killed. There was evidence that this train was going at the rate of from twenty-eight to thirty-five miles an hour, and that it gave no proper signal. *Held,* (1) that the boy was not a trespasser to whom the railroad company owed no duty whatever; (2) that the question of the railroad company's negligence was for the jury; (3) that the court could say as a matter of law that on account of the child's age no question of contributory negligence arose in the case; (4) that a verdict and judgment for the father of the child should be sustained.

In the above case it was not error to permit the plaintiff to show that the accident occurred at a time when there was usually the greatest amount of travel upon the crossing. Such evidence would have a bearing upon the question of the care which it was incumbent upon the railroad company to exercise in the management of its trains at that hour of the day.

In a grade crossing accident case where the counsel for the railroad company has developed by cross-examination that there were safety gates at the next crossing, and this evidence is relevant as bearing upon the character of the crossing where the accident took place, it is not error to permit the plaintiff to show that the gates were not at the other crossing when the accident occurred.

Argued Oct. 7, 1904. Appeal, No. 74, Oct. T., 1904, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1902, No. 2929, on verdict, for plaintiff in case of Jacob Metzler *v.* Philadelphia & Reading Railway Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's son. Before WILLSON, P. J.

The circumstances of the accident are stated in the opinion of the Superior Court.

When plaintiff was on the stand he was asked this question:

Q. The surveyor was asked if there were gates at Levering street. Were there any gates at all at Levering street prior to this accident?

Objected to.

The Court: The surveyor did state that there were gates there. It is proper that this witness should be questioned about the same matter.

Mr. Hart: You cannot prove that there were gates put there after the accident.

The Court: Not at all. Not for the purpose of proving negligence. I will admit the answer, not, however, for the purpose of showing any negligence on the part of the railroad company in failing to have gates there at the time.

Mr. Hepburn : For the purpose of showing what the surveyor had said about there being gates, that they were not there at the particular time of this accident.

The witness: No, sir.

Exception for defendant. [1]

Q. Do you know at what times of the day the greatest amount of travel at this particular street is—Gay street?

Objected to. Objection overruled. Exception for defendant. [2]

A. In the mornings, when the people are going to work, and from that up until half-past nine in the morning, when the people are taking the train, that they go up and down this crossing, and then at noon and in the evening.

The court charged in part as follows :

[It is said that there had been for a long period of time a recognized course or thoroughfare, or way over the premises occupied in part by the railway company ; that people had been in the habit of going that way backwards and forwards to their homes and places of occupation and places of business ; that this boy was doing what multitudes of people did there day by day. If that is so, if you believe that the evidence justifies you in concluding that the railroad company had done that, had made provision for it, that they allowed it without objection,

that they acquiesced in that use of a general thoroughfare from one side to the other, then you ought to conclude that, as a consequence, the boy had a right to do that which the railway company acquiesced in people's doing ; that one person, as a part of the public, had a right to do what the general public did.] [3]

[Besides that, it seems to me that there would be another question, and that is, whether there could be said to be a trespass on the part of a boy of nine or ten years of age in any event, who went upon the platform of a railroad company which was built either partly on the highway itself or alongside of it. To put the case in the strongest aspect in the interest of the railroad company, it would be a question for you to determine whether such a boy should be regarded as being guilty of trespass upon the property of the defendant company if he went upon such a portion of their platform, even though it were not a recognized thoroughfare, and was attempting to cross to the other side of the street. I should consider it, I confess, a very serious question whether it ought to be concluded, in a question of that kind, that a boy using the premises in such a manner would be regarded as guilty of trespass, and, therefore, as precluding his father from recovering under such a state of circumstances as exists in this case.] [4]

[All these questions I have just referred to I will leave to you to decide one way or the other. If the railway company was not responsible, if it was not bound to exercise care for the protection of this boy, if there was no recognized thoroughfare there, such as has been testified to by witnesses, or if the boy was a pure trespasser upon property where he had no right to be, where there was no encouragement for him to be, which was not situated in such a way as to hold out an invitation apparently to the public, in that case there was no duty on the part of the railway company, and the railway company could not be regarded as guilty of any negligence, in view of any testimony which has come into the case.] [5]

[But if the boy was properly where he was, if you must regard him as being in a position in which the railway company did owe him a duty, that they were bound to do, towards a boy of his age, inexperienced and immature, and placed in the circumstances that he was, what was reasonably proper in the way

of giving notice of the approach of a train, so that he would be able to take care of himself, to be safe from danger, in that case the question will come up : Was there proper notice given in any way, either by some watchman or some caretaker, giving him personal and direct notice, as to which there is no evidence or by a proper signal being given from the approaching train ?] [6]

[This pay train that was standing alongside of the station, apparently, from the evidence, cut off the sight of the approaching train from any person that was right alongside of it or in the rear of it. This boy seems to have been in the rear of it. He may not have been able to see the approaching train. It was with reference to such a condition of affairs that the railroad company was bound to give notice. Did it give notice ? Was a whistle blown at the distance just stated ? Other witnesses who have been called say that no whistle was blown, so far as they heard, until just the moment when the boy was struck, when he came out from behind the car. That probably, you would say, was hardly sufficient notice, if that was all the notice that was given.] [7]

Defendant presented this point:

Under all the evidence the verdict must be for the defendant. [8]

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions (3–8) above instructions, quoting them.

*Gavin W. Hart,* for appellant.—The law is that the defendant's duty, whatever it might be, was in no way dependent upon the time of using or the difference in numbers using the crossing. The law is the same whether it was in the vicinage of either a few or of many inhabitants : R. R. Co. v. Hummell, 44 Pa. 375 ; and the duty never varied.

The jury alone could determine whether the boy was capable of negligence and they should have been distinctly so instructed : R. R. Co. v. Spearen, 47 Pa. 300 ; Moore v. R. R. Co., 99 Pa. 301 ; R. R. Co. v. Hummell, 44 Pa. 375 ; Gillespie v. McGowan, 100 Pa. 144 ; R. R. Co. v. Schwindling, 101 Pa. 258 ; Rodgers

v. Lees, 140 Pa. 475; Bridge Co. v. Jackson, 114 Pa. 321; Feehan v. Dobson, 10 Pa. Superior Ct. 6; Brague v. Ry. Co., 192 Pa. 242.

Clear knowledge or notice must be brought home to a railroad company to establish a permissive crossing, and acquiescence cannot be inferred where there is nothing to bring home knowledge or notice of an unauthorized use of the roadbed: R. R. Co. v. Schwindling, 101 Pa. 258; Gillis v. R. R. Co., 59 Pa. 129; Sutton v. R. R. Co., 66 N. Y. 243; Redigan v. Boston, etc., R. R. Co., 155 Mass. 44 (28 N. E. Repr. 1133.)

*William A. Carr*, with him *W. Horace Hepburn*, for appellee. —It is respectfully submitted that under the facts, the case was a proper one for a jury, as will appear from the following cases: Daubert v. Railroad Co., 199 Pa. 345; Taylor v. Canal Co., 113 Pa. 162; P. & R. R. R. Co. v. Troutman, 11 W. N. C. 453; Kay v. Penna. Railroad Co., 65 Pa. 269; Penna. Railroad Co. v. Lewis, 79 Pa. 333; P. & R. R. R. Co. v. Long, 75 Pa. 257.

As to the criticism of the judge's charge made by the appellant, that he omitted to charge the jury that appellee's son might have been guilty of contributory negligence, it would seem to be sufficient to say that the age of the boy precluded the question of contributory negligence arising in the case: Taylor v. Canal Co., 113 Pa. 162; McMullen v. R. R. Co., 132 Pa. 107; Daubert v. R. R. Co., 199 Pa. 345.

The railroad cases cited by the appellant in which minors have been held to be trespassers, were all cases where the minors were not at crossings, or were not crossing the tracks, but walking along them, or were upon the private property of the railroad.

Upon the question of defendant's negligence, there would seem to be no answer to the uncontradicted evidence that the train of the appellant was run over the Gay street crossing at the rate of twenty-eight to thirty-five miles an hour, and that it gave no signal whatever upon its approach to the crossing, either by ringing of a bell, or blowing a whistle.

OPINION BY RICE, P. J., July 13, 1905:

This was an action of trespass brought by the plaintiff to

recover damages for the death of his minor son, aged between nine and ten years, caused by his being struck by a train of the defendant company nearly opposite its station at Manayunk in Philadelphia upon what is spoken of in the testimony as Gay street crossing. On the day of the accident, at an hour when according to the testimony there was usually the greatest amount of travel upon this crossing, a pay train, consisting of an engine and car, was standing on the track nearest the station, the end of the car being just clear of the plank footway at the crossing. The boy came up the station platform from the direction of Levering street dragging a sled, and, without stopping, turned to go over the crossing. After he had passed the end of the pay train and reached the other track, he was struck by the pilot of the engine of an express train running southeasterly at a speed estimated by the witnesses at from twenty-eight to thirty-five miles an hour, and thrown to the outside of the track. There is a sharp curve in the track in the neighborhood of 600 feet to the northwest of the crossing beyond which, it is alleged, an approaching train cannot be seen. It was also alleged that the view of the track in question after it had rounded this curve was obscured by the standing train, and that no proper signal was given until the train was almost upon the boy. One of the witnesses testified : " I happened to look up and I heard the locomotive make a sharp whistle and at the same time I saw the boy and sled go up in the air, at the same time the thing happened." These questions of fact were submitted to the jury and were determined in accordance with the plaintiff's contention.

The principal question presented for our consideration by the learned counsel for the defendant in his statement of the questions involved relates to the nature of this crossing and to the duty of the company in the exercise of ordinary care, to give the warnings to the general public of approaching trains usually given at public crossings. A statement of the facts, which in the main are undisputed, is essential to a complete understanding of the question.

The defendant's two railroad tracks at the point in question are laid in the center of Cresson street, which is closely built up on both sides and is in a populous part of the city. The railroad station is on the northeast side of the track. To the

northwest of the station the street is intersected by Carson street, and to the southeast of the station by Levering street. Both of these intersecting streets are planked across the railroad and are open to travel by vehicles and pedestrians. They are distant from each other about 300 feet. · The open station platform, which is much longer than the station building upon which it fronts, extends from Carson street to within about seventy-five feet of Levering street. It was stated by one of the witnesses that this platform is located on the bed of Cresson street. It appears also from the draft and some of the photographs offered in evidence that for part of its width, at least, and for the whole of its length, it corresponds in location with what would be the public sidewalk if that were extended from Carson street to Levering street. On the other side of the tracks, directly opposite the station platform, and cor-. responding with it in length, is another open and uncovered platform maintained by the company. This platform appears to be wholly within the lines of Cresson street, but is separated from the sidewalk, which is between it and the building line, by a wooden railing. This platform, as is the station platform, is elevated above the tracks a foot and one half or two feet but judging from the photographs offered in evidence, it is open at both ends and is unobstructed to travel by pedestrians who choose to mount the two or three steps leading up to it and to pass along Cresson street from Carson to Levering in that way. Nearly midway between Carson and Levering streets and to the southeast of the station building, but opposite the station platform, Gay street joins Cresson street at nearly a right angle. It seems, however, that it does not cross directly at that point, but is continued on the upper side of Cresson street from a point about 130 feet to the southeast. Three steps lead directly from the Gay street sidewalk up to the platform on the lower side of Cresson street, an opening of the full width, or nearly so, of the sidewalk being left in the railing heretofore referred to to permit pedestrians to pass freely to and fro. Directly opposite this opening a plank walk is laid across the railroad bed for the use of pedestrians, and the two platforms are depressed at this point to correspond substantially with its level. This is what is referred to in the testimony as the Gay street crossing.

The witnesses testify that the population of Manayunk is about 40,000; that this station is nearly in the center of the most thickly populated part; that the residences are principally on or beyond the upper or station side of Cresson street and the factories and business places on the other side; that the public in large numbers, uninterruptedly, and for a long time—for forty years according to one witness—have used this Gay street crossing as a convenient way from one part of the city to the other. Without going into the details of the evidence upon this point, it is enough to say that the evidence would warrant a jury in finding, first that this use was so frequent, general, uninterrupted and long continued that it must have been known to the officials and agents of the railroad company in charge at that point, and second that nothing was done by them to prevent it, or to notify the public that it was forbidden, or that the right to use the way thus provided for crossing the railroad and the street upon which it is laid was restricted to arriving and departing passengers. The fact that at the northwest end of the station platform and at the southeast end of the other platform there was a sign: "Danger, Do not walk or trespass on the railroad" does not, in our opinion, require a modification of the foregoing statement relative to the Gay street crossing. There was nothing in that sign to indicate that it was intended for those not having business with the railroad company or going to or from its trains as passengers. An ordinary person would not interpret it to mean that the platform and the footway crossing provided for the purpose were not to be walked upon. In short, it was not a sign excluding the general public from that part of the highway.

As a general rule, a railroad company has the exclusive right to use its own track, and one who goes upon it without an invitation or license from the company is a trespasser. But this rule does not apply at highway crossings, nor invariably where the track of the railroad is laid longitudinally upon the surface of the street. In a case which arose out of a railway accident upon this very street, Justice Agnew said: "Thus it is evident that the position of the child while the train was moving up Cresson street, the outlook of the engineer, the place of the fireman, the rate of speed, and all the circum-

stances were matters entering into the question of negligence, taken into connection, also, with the all-important fact that Manayunk is a closely built, populous town, Cresson street a public thoroughfare, not of great width, where many persons of all ages, sexes and condition are constantly passing and re-passing, and crossing the tracks of the railroad rightfully." Further on he said : " Where the people and the trains have a common right to be, and to have a joint use of the highway, the rights of each must be regarded : " Philadelphia and Read-ing Railroad Co. v. Long, 75 Pa. 257. We do not cite this case as authoritatively determining that all members of the general public have a right to cross Cresson street and the railroad tracks upon it wherever it suits their convenience or pleasure. It is, however, a pertinent authority for the propo-sition that no conclusive presumption of law arises from the evidence in this case that the boy who was killed at the Gay street crossing was a trespasser, either when he was upon the crossing or was walking along the highway upon the platform above described for the purpose of reaching the crossing. The evidence does not disclose how or when the company acquired the right to maintain its tracks and platforms on Cresson street; nor does it show the extent of the right thus acquired. It is to be presumed, however, in the absence of evidence to the contrary, that its occupancy of the street to the extent that it goes is lawful ; it may also be conceded for the purposes of the case that the company had a right to appropriate to its exclusive use all that part of the street lying between Carson and Levering streets. But it must be conceded also that if in making its appropriation it contemplated and provided for a continued although restricted use of it by the general public it would be bound in the exercise of ordinary care in the operation of its trains to have regard to such use. In other words, whether the use of this crossing by the public was by virtue of a right of which the railroad company could not de-prive them, or was terminable at its will, yet so long as it was permitted by the company the latter was chargeable with knowledge of the danger to human life incident to such joint use of the highway at that point and was bound to such precaution in the management of its trains as ordinary prudence dictated for the protection of pedestrians from in-

jury. To hold as a matter of law that under the facts of this case a pedestrian crossing Cresson street at the Gay street crossing was a trespasser to whom the company owed no duty whatever, not only would be going far beyond what was decided in any of the cases cited by the appellant's counsel but would be irreconcilable with several more pertinent decisions. This will appear from a brief review of the cases. In Philadelphia & Reading Railroad Co. v. Hummell, 44 Pa. 375, the accident by which the plaintiff was hurt did not occur at any street or at any public or permissive crossing, but upon a railroad siding which ran over the lands of others, and as pointed out in a later case the evidence did not show that it was subject to any permissive use. The company had paid for its right of way and had a clear right to a free track which they had not yielded up or modified by any act of their own : Kay v. Pennsylvania Railroad Co., 65 Pa. 269. In distinguishing the case last cited from Gillis v. Pennsylvania Railroad Co., 59 Pa. 129, upon which appellant's counsel relies, AGNEW, J., used language which may be appropriately quoted to distinguish it from the present case. "Thus in Gillis v. Railroad Co., it will be seen that the negligence alleged was purely of a negative character, in omitting to keep up a structure sufficient to bear the weight of a crowd unexpectedly and exceptionally gathered upon it, for their own curiosity, and for no purpose connected with the use of the railroad. But in the present case the negligence charged consisted of a positive act of carelessness, in sending a car around a curve out of sight, on a descending grade, at a place where persons might be expected to be, from the permissive use suffered by the company. It was the duty of the court, therefore, to have submitted the facts to the jury for their determination, whether there was negligence or not." In Baltimore & Ohio Railroad Co. v. Schwindling, 101 Pa. 258, the court carefully pointed out the distinction between it and cases like the present in the following manner : "The cases of injuries to persons while crossing the track at permissive crossings are not analogous, and have no application. When the right to cross at a particular place is established, by permission or otherwise, the duty of ordinary care is incumbent upon the company. But in the present case the plaintiff was not engaged in the act of crossing the track or

even the platform when he was injured, and therefore the cases on this subject are not in point." In Moore v. Pennsylvania R. R. Co., 99 Pa. 301, the boy was walking along the ties. " He was not on the track at a public crossing, nor was he in the act of crossing. It is true that the railroad track at this place was laid upon the bed of a public street, and hence the right to cross it was not limited to the highway or street crossings. But the boy was walking along the track, and not across it, when he was struck. This he clearly had no right to do." The same substantial distinction was recognized and pointed out by the Supreme Court in Brague v. Northern Central Ry. Co., 192 Pa. 242, and Kaseman v. Sunbury Boro., 197 Pa. 162.

" Duties grow out of circumstances, the authorities tell us, and that which in one case would be an ordinary and proper use of one's rights may, by a change of circumstances, become negligence and a want of due care : " Kay v. Pennsylvania R. R. Co., 65 Pa. 269. In the application of this general principle it has been held that where a person crossed a railroad track by a common and well-known footpath used by the public for many years without let or hindrance on the part of the railroad company and its employees he could not be regarded as a trespasser to whom the company owed no duty to give warning of approaching trains : Philadelphia & Reading R. R. Co. v. Troutman, 11 W. N. C. 453. " The principle clearly settled by the foregoing, and many other cases that might be cited, is, that when a railroad company has for years, without objection, permitted the public to cross its tracks at a certain point not in itself a public crossing, it owes the duty of reasonable care towards those using the crossing ; and whether in a given case such reasonable care has been exercised, or not, is ordinarily a question for the jury under all the evidence : " Taylor v. Delaware & Hudson Canal Co., 113 Pa. 162. If this be true of a case where the tracks are laid upon land in the exclusive ownership of a railroad company, the principle applies with greater force where they are laid in the street of a thickly populated part of a city and a footway has been provided for pedestrians to cross them at the junction of the street with another street. The construction and maintenance of such footway at such a point, without notice being given that it was

exclusively for the use of passengers, followed by such notorious and long continued use of it by the general public in crossing the highway as we have heretofore described, were facts from which it might well be inferred, that if it was not originally provided as a public crossing, its use of it by the public was with the knowledge and acquiescence of the company. This being so, it would have been manifest error for the court to instruct the jury that the company owed no duty to give warning of approaching trains to members of the general public not having business with the company, who used this footwalk at Gay street as a convenient way across Cresson street and the railroad tracks upon it. Under all the evidence the defendant has no right to complain that the question whether in the movement of its train the company exercised that degree of care which under the circumstances it was in duty bound to do was submitted to the jury. Nor have we been convinced by the earnest argument of appellant's counsel that there was any substantial error in the manner of its submission.

But it is urged that even if this was a recognized crossing and the boy was not a trespasser, the question of his contributory negligence ought to have been left to the jury to determine under proper instructions as to what was required from a boy of his years in a dangerous place. And while it is conceded that there was no evidence as to his capability or measure of intelligence, it is claimed that the presumption is that he was as capable and intelligent as the average boy of his age. The latter proposittion is in accordance with the rule as restated by Mr. Justice FELL in Parker v. Washington Electric Street Railway Co., 207 Pa. 438 ; but it was held in that case, as it had been in many previous cases, that where the facts are settled and there can be no reasonable doubt as to the inferences to be drawn, the question of the infant's contributory negligence may be determined by the court as a matter of law. In the same connection Justice FELL cites Taylor v. Delaware & Hudson Canal Co., 113 Pa. 162, as a case where the court properly held that because of her age the infant could not be charged with negligence and that the question of contributory negligence did not arise in the case. Other cases may be cited in which the same ruling was sustained, but it seems to us unnecessary to multiply authorities upon the point

when a case so closely analogous as Taylor v. Delaware & Hudson Canal Co. is presented. It is to be observed further, that the court was not requested to charge upon the question of contributory negligence.

The only remaining assignments of error that require notice are the first and second, which relate to rulings upon questions of evidence, and these may be briefly disposed of.

We agree with the appellant's counsel that it was not permissible for the plaintiff to prove that gates were erected at the Levering street crossing after the accident for the purpose of showing negligence. Proof of negligence at that point would have been irrelevant to the issue, and second, the fact of negligence could not be established in that way : Baran v. Reading Iron Co., 202 Pa. 274. But the evidence which is quoted in the first assignment was not offered for that purpose. The defendant's counsel evidently deemed the fact that Levering street crossing was protected by gates at the time of the accident as having a bearing upon the question whether there was a permissive crossing at Gay street recognized by the company, and we cannot say that it would have been wholly irrelevant. But having drawn out from the plaintiff's witness upon cross-examination the statement that the crossing was protected by gates, the court committed no error in permitting plaintiff to prove that they were not there at the date of the accident.

It may be, as appellant's counsel well says, that upon the question whether this was a permissive crossing, evidence as to the amount of travel upon it at different times of day would be immaterial. Grant that to be so, still if the facts were found that it was a permissive crossing and the boy was not a trespasser, it was not irrelevant to show that the accident occurred at a time when there was usually the greatest amount of travel upon the crossing. In that event this evidence would have a bearing upon the question of the care which it was incumbent upon the railroad company to exercise in the management of its trains at that hour of the day. Upon an examination of the whole record we find no error for which the judgment should be reversed.

Judgment affirmed.