Pressler, Appellant, *v.* Pittsburgh.
O'Donnell *v.* Pittsburgh Railways Company,
Appellant.

Argued October 5, 1965.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Leo Daniels,* with him *Prichard, Lawler & Geltz,* for appellant.

*George Shorall,* Assistant City Solicitor, with him *David Stahl,* City Solicitor, for City of Pittsburgh, appellee.

*Thomas L. Cooper,* with him *McArdle, Harrington, Feeney & McLaughlin,* for appellees.

*Thomas Park Shearer,* with him *Brandon, Shearer & Flaherty,* for appellee.

Opinion by Mr. Justice Musmanno, November 23, 1965:

On Sunday, April 17, 1960, at about 4 p.m., the fire gong in Engine House No. 4 on Stevenson Street in Pittsburgh clanged the tidings of a fire raging on Our Way in the tenement area of what is known as

the Lower Hill District in Pittsburgh. With the proverbial catamount swiftness of firemen responding to an alarm, the crew members leaped to their designated positions on their Seagrave Pumper No. 187, with Hoseman Bernard Daugherty, as acting captain, at the wheel, Paul J. O'Donnell on the front seat beside him, John Gasior mounting the rear platform of the fire apparatus.

With lights flashing and sirens wailing, the fire truck roared out of the engine house on to the pavement of Stevenson Street, turned left and headed north. When it reached Forbes Avenue, which intersects Stevenson Street, running east and west, Hoseman Daugherty brought his heavy equipment to a stop, all the while however keeping the red light atop the truck flashing and the fire siren functioning at top pitch. He noted a streetcar headed eastwardly some 200 feet away and, while the air-piercing siren continued to blast, he moved into the intersection. He had gotten three-fourths of the way across Forbes Street when the streetcar, traveling at a speed in excess of 40 miles per hour, crashed into the fire vehicle, knocking the crew members loose from their positions. The force of the thunderous impact sent Fireman John W. Gasior, who had been standing on the rear platform, catapulting through the air, over the streetcar, and eventually landing beneath it. Fire hose released by the violence of the collision went serpentining into the street and, fortunately, crossed the streetcar track, halting the movement of the streetcar which otherwise might have run over the prostrate fireman Gasior. Even so, the streetcar traveled some 75 feet east of the intersection after the impact and then derailed. The fire truck was spun around by the momentum of the double juggernaut collision and came to rest at the northeast corner of Forbes Avenue.

When the dust, noise, confusion and agonized shouting of the scene had quieted, and the juggernauts were stilled, an appraisal of the havoc caused by the collision counted four injured persons, a streetcar damaged, and a fire truck more or less wrecked.

Multiple lawsuits followed. The City of Pittsburgh sued the Pittsburgh Railways Company for the ruin done the fire truck, the Pittsburgh Railways Company sued the City of Pittsburgh for damage done to its streetcar. The motorman of the colliding streetcar brought suit against the City of Pittsburgh for personal injuries sustained by himself, and the three firemen, Daugherty, O'Donnell and Gasior, sued the railways company for their personal injuries. In the O'Donnell and Gasior suits, the railway company brought in Daugherty as an additional defendant.

The cases were consolidated for trial and the jury returned verdicts in favor of the City of Pittsburgh and the three firemen. The railways company moved for a new trial alleging trial errors.

At the trial the railways company offered to show that as far back as October, 1958, the City had prepared street traffic plans which would include the installation of special warning devices at the corner of Forbes and Stevenson. These devices had not been installed until October, 1960, some six months after the accident. The trial court refused to allow evidence on this subject and the appellant argues that this constituted error because, it says, the evidence would show that the City acknowledged before the accident the dangerous character of the intersection and the possibility that the noise-making devices of the fire engine were not loud enough to be heard by the streetcar motorman.

The general rule, of course, is that evidence of repair or alteration work done at the scene of an accident after the accident cannot be introduced to impute

antecedent negligence to the alleged tortfeasor.\* There
are several exceptions to this rule and the question
in this case is whether the situation described falls
within any of those exceptions. In the case of *Baran
v. Reading Iron Co.,* 202 Pa. 274, this Court, in disap-
proving of evidence showing subsequent precautions,
said: "It is not more likely to show that there was
negligence before the accident than that the occurrence
of the accident first suggested the use of methods or
appliances not before thought of; it applies to conduct
before an accident a standard of duty determined by
after-acquired knowledge; it punishes a prudent and
well-meaning defendant who guards against the recur-
rence of an accident *he had no reason to anticipate,* or
who out of a considerate regard for the safety of others
exercises a higher degree of care than the law requires."
(Emphasis supplied.)

The appellant points to that part of the quotation
which protects the well-meaning defendant against lia-
bility for an accident which "he had no reason to an-
ticipate" and argues that the City did have reason
to anticipate the necessity for installing warning de-
vices at Forbes and Stevenson. The plans referred to
by the appellant were not limited to Forbes and Steven-
son. They applied to the entire city and envisioned in-
creased protection for street traffic where emergency
vehicles might pass.

The appellant company did not show any special
circumstances, such as numerous accidents at the street
intersection in question, which would put the City on
notice that it should exercise an unusual degree of care
at this point. There was no evidence that the City
had reason to expect exceptional risks at Forbes and
Stevenson. It was not shown that the noise of the

---

\* *Weimer v. Westmoreland Water Co.,* 127 Pa. Superior Ct. 201;
see *Hyndman v. Pa. Railroad Co.,* 396 Pa. 190, for discussion.

blasting siren, together with the clatter and pandemonium accompanying fire engines on their mad dash toward extinguishing a conflagration did not create enough audible sensation to warn all persons and drivers of vehicles to beware of the advancing heavy rumbling equipment.

In the case of *Leghart v. Montour R. R. Co.*, 395 Pa. 469, 473, the defendant objected to the introduction in evidence of a photograph showing that the hole figuring in the accident had been repaired after the accident. This Court held that while "evidence of subsequent precautions is ordinarily inadmissible . . . an exception exists where the purpose of the evidence is to show control or to impeach relevant testimony." (See also *Woodring v. Metro. Edison Co.*, 108 Pa. Superior Ct. 431; *Brown v. Towanda Borough*, 24 Pa. Superior Ct. 378; *Metzler v. Phila. & Reading R. R. Co.*, 28 Pa. Superior Ct. 180.) In *Metzler v. Phila. & Reading R. R. Co.*, 28 Pa. Superior Ct. 180, counsel for the defendant railroad company developed by cross-examination that there were safety gates at the next crossing, and the court held this evidence was relevant as bearing upon the character of the crossing where the accident took place, but then ruled further that it was permissible for the plaintiff to show that the gates were not at the other crossing when the accident occurred.

However, there is nothing like any of these circumstances in the case at bar, and to allow the introduction into evidence against a municipality of a planning board diagram designed to increase street safety *generally,* would be to penalize the municipality for its foresight and concern for the welfare of the people.

The appellant complains that the trial judge's instructions on the responsibility of a fireman going to a fire were confusing. Section 1028(d) of The Vehicle Code (75 P.S. §1028) provides that the operator of a

fire department vehicle entering an intersection against a red traffic signal shall do so with "due regard for safety." That same section warns that the operator of any such vehicle shall under no circumstances be exonerated from the consequences of a "reckless disregard of the safety of others."

The trial court properly charged on this feature of the code but seemed to suggest that a fireman could possibly be a little negligent and yet not be at fault. No one is allowed to be a little negligent without responsibility any more than one is allowed to commit at will a little crime. Circumstances may wipe out culpability or legal responsibility but no one is authorized to violate the law. The court apparently was of the impression that since the Code added the specific admonition that a fireman would be held responsible for a "reckless disregard of the safety of others," the Code meant to imply that anything less than such reckless disregard was tolerable and allowable. This, of course, is not so. If a fireman, under the stress of his grave responsibility to save life and property, transcends the limits of a municipal ordinance the latter may well be swallowed up in the greater duty of the fireman to preserve life. Briefly then, it may be stated, and should be repeated, with the resounding effect of a fire bell sounding the alarm, that negligence is the lack of due care *under the circumstances.*

However, the slight confusion, if any there was in the early part of the court's charge, was wholly corrected by the latter statement, vigorously expressed: "Members of the jury, it has been brought to the court's attention that while I have been trying to be so careful to make sure that your minds would be focused upon and concentrated upon the particular provisions of law governing the duties of an operator of a fire truck and the other vehicles involved in this particular situation, that you are to find the fault within the

purview of the language of those provisions of the law, the court did say that a fireman cannot be negligent in such a situation. The court wants you to disregard that statement, if I said it and if you heard it in that manner, to disregard the statement at this time and merely determine, again from all the circumstances, all the testimony, all the plans, all the exhibits, all the facilities brought to your attention, the location, the area, the scene, in other words, any knowledge that you have about this matter brought out during the course of this trial, determine where the fault lies in this situation when read in the light of those provisions."

When the appellant's attorney remarked: "I thought you said he is allowed to be negligent, and I asked you to retract it," the court said: "If I said it, I am retracting it, and you are not to consider it in this situation." Appellant's counsel then acquiesced in what had been said.

Thus, the fire bell of instruction on this subject could not have been rung with more insistence and with more clarion clarity.

The appellant contends further that the court erred in telling the jury that they should not decide the factual issues by contrasting the number of witnesses who testified on the opposing sides. The judge stated: "Justice, or your decision, should not be based on the number of people who testified but on the quality of the testimony that was given in the trial."

Jurors are not comptometers. They do not, or should not, decide cases by counting witnesses on either side and then giving their verdict to the side with the greater number. Justice is not a matter of comparable mathematics. It is the quality of the evidence which is submitted and not the quantity which determines credibility, verisimilitude and truth. The cry of one hundred frenzied fans in the bleachers that a runner scored safely by a whisker should not wipe out the ob-

servation of one spectator in the grandstand behind the home plate who states that the runner was only half way to the home plate from third base when the catcher pounced on him with the fatal ball.

The appellant says several passengers in the streetcar said they did not hear the siren of the fire truck just before the accident whereas only one streetcar passenger testified to the contrary. The jury saw these witnesses and could determine whether, in interest, attention and ability to observe, these witnesses were bleacher witnesses or grandstand witnesses. Moreover, the one who was charged with hearing and observing was the motorman, and his location in the streetcar, of course, was closer to the fire truck than the passengers sitting back in the streetcar.

Finally, the appellant contends that the trial court erred in failing to accept its points for charge and that the verdicts were against the weight of the evidence. As to the former we are convinced that the matter in the requested points for charge were adequately covered in the general charge. As to the latter, we are satisfied, with the trial court, that the verdicts were not against the weight of the evidence.

Affirmed.

Mr. Justice JONES concurs in the result.