## Springer v. Allstate Insurance Company

*John B. Leete,* for plaintiff.
*Richard W. Mutzabaugh,* for defendant.

FINK, *P.J.,* April 21, 1983—Plaintiff is the administratrix of the estate of one LisaSue Springer who was born May 27, 1972, and on March 13, 1981, was killed when struck by an automobile in Potter County. The complaint, essentially, alleges the fact that the decedent was killed by an automobile in Potter County and was covered by defendant insurance company as being a child of an insured owner of a motor vehicle. The complaint further alleges that plaintiff, as administratrix of the minor decedent's estate, has made demand of defendant for work loss benefits under the primary no-fault coverage, but defendant has at all times refused to make

payment; wherefore, the amount of $15,000 is demanded together with costs and attorney's fees "as provided by law, together with interest on past due installments as provided by law".

Defendant has filed an answer containing new matter basically admitting that plaintiff is entitled to "basic loss benefits", but in the body of the answer, together with the new matter, essentially, takes the position that the child was eight years old at the time of her death; that under ordinary circumstances she would not be expected to enter the work force until she was 18 years of age, which would be May 27, 1990; and thus,the estate would not be entitled to any work loss benefits under the no-fault coverage until the work loss payments would accrue up to $1,000 a month at the age of 18 until the total sum of $15,000 was paid.

Defendant further asserts that it has offered plaintiff the "sum of $5,000 now rather than wait until such benefits accrue as set out hereinabove". It should further be noted that the "wherefore clause" of defendant's answer and new matter requests that a verdict be entered for plaintiff in the sum of $15,000, "the first payment on same to become due and payable on June 27, 1990, and additional sums to be made payable monthly thereafter until the total sum of $15,000 be paid, said monthly sums to be calculated on the wage loss of plaintiff's decedent monthly, but no more than $1,000".

Plaintiff thereafter filed a motion for judgment on the pleadings which is currently before the court. It appears that both counsel agree that the issues are best presented to this court by a motion for judgment on the pleadings in that there are no factual matters to be determined and that the legal issues are squarely presented to the court for determination according to law.

The first issue is whether or not an estate of a minor decedent is entitled to work loss benefits under the no-fault act by lump sum payment in the amount of $15,000 at the time of death or at the time the estate is raised as opposed to monthly payments up to a maximum of $1,000 at the time the decedent would have reached her majority, viz., 18 years of age, until the total $15,000 was paid. In arguing this, counsel both, generally, discussed Heffner v. Allstate and Freeze v. Donegal, 419 Pa. 447, 421 A.2d 629 (   ); and Pa. Super. 447 A.2d 999 (   ), respectively. Both concede that neither case answers the precise issue presented to this court, however, we would do well to review the precise holding of each of the two cases. In Heffner v. Allstate, a widow sought work loss benefits in addition to survivor's benefits for the death of her husband under the appropriate no-fault coverage. The Heffner court decided that, indeed, the widow in her own right could collect both. Freeze v. Donegal went a step further and stated that the estate of an 11 year old decedent could collect work loss benefits notwithstanding the fact that the estate was not specifically defined as a "survivor" under the Act.

It may appear on the face of it that the issue before this court is a "Freeze" issue, however, there was no express wording in the Freeze opinion as to whether the estate could collect in lump sum as opposed to the statutory method of not more than $1,000 a month and, further, whether said payment must be predicated upon payment only when a minor decedent would have reasonably obtained employment. In Freeze, the court pointed out Section 205(c) which sets forth method of determination of the amount of work loss when not employed at the time of the accident. The court stated that the section was applicable to a victim that was never em-

ployed and, therefore, applicable to the estate of an 11 year old child. We, therefore, conclude that based upon the application of the Freeze court of Section 205(c) to its 11 year old decedent, our issue is, indeed, answered. This court believes it is clear, therefore, that the estate should be paid in monthly installments the statutory amount due as calculated by 205(c) of the Act as of the date of the accident assuming that the ¹ecedent was unable to work between the date of the accident and the date of death (this would be applied if there is an intervening period between date of accident and date of death). It might well be argued that the payment, the amount of which would be determined under 205(c), should be made only as of the date the estate is raised for it could not reasonably be expected that the writer of the insurance policy could pay a legal being before it came into existence. This court's answer to that argument would be that the wording of the statute would appear to direct the accrual of monies due as of the date the victim was taken out of the work force by virtue of the accident. Therefore, payments to the estate should be made retroactive to the date of the accident.

The next issue is whether or not Allstate, in the instant case, should be compelled to pay 18 percent per annum interest on all payments when due. Section 106 clearly sets the criterion for interest payments in the amount of 18 percent, and the criterion simply is "delay". It has nothing to do with whether the delay should be excused or anything to do with "fault". Delay is defined as payments "overdue" which, in turn, is defined by subsection (2) as follows:

"No-fault benefits are *overdue* if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and

amount of loss sustained, unless the obligor designates, upon receipt of an initial claim for no-fault benefits, periods not to exceed thirty-one days each for accumulating all such claims received within each such period, in which case such benefits are overdue if not paid within 15 days after the close of each such period."

As has been the case with most sections of the legislative abomination known as the "No-fault Motor Vehicle Insurance Act", the judiciary, left to attempt to interpret the legislation, is often left in the depths of quandry, as this trial judge is, in seeking to apply the section above mentioned to the issue of interest when dealing with "overdue" payments of work loss benefits to a decedent's estate. The best attempt this court can make as to effectuating the above section under the facts of the instant case is to glean the legislative intent to mean that the payment is overdue under the facts in the instant case after the passage of 31 days after "reasonable proof" is submitted to the obligor of their obligation to pay work loss benefits. Absent from the record is the time at which reasonable proof of facts as to the obligation to pay the work loss benefits was submitted to said company and, therefore, the record will be kept open for the receipt of a stipulation or the presentation of testimony to make such determination.

The last issued presented to this court is one of whether or not defendant need pay reasonable attorney's fees. Section 107 appears to be dispositive of this issue. Subsection (1) appears to cover situations where the claimant is compelled to incur attorney's fees in order to, in turn, compel the obligor to *make payments timely.* If this be the case, there appears to be no difference whether the obligor acted unreasonably, intentionally, or negligently. Subsection (3) refers to a situation where a claimant is

compelled to incur legal fees because the obligor has *denied* any obligation and in order to assess attorney's fees against the obligor here, it is necessary that there be a finding that the obligor was not justified or was without reasonable justification for denial.

Reasonable minds may differ as to whether the facts here fit into number (1) or number (3) where the insurance company, after the lawsuit was filed, says, in effect, there ought to be a judgment entered in favor of plaintiff and against defendant for the sum of $15,000 but not collectable or payable until May of 1990. This court is of the belief that the obligor would be responsible for payment of attorney's fees whether (1) or (3) were applicable because even if it is a (3) situation, this court is of the belief that the Act is clear without the benefit of further judicial clarification in Freeze that the payments are due the estate of the minor decedent on a monthly basis under Section 205(c). Whether Freeze is currently on allocatur or whether Freeze was decided subsequent to the initial accrual of the insurance company's obligation to pay in the instant case is of no moment. The statute itself was in effect and is alone sufficient to establish the necessity for payment as above indicated. It is necessary, however, that this court make a determination as to whether this is a (1) or (3) situation for a collateral reason. If it is (1), we would understand that the attorney for the claimant could not in any way diminish the no-fault benefits to be received by the claimant and, therefore, the only attorney's fees received by counsel for plaintiff as to the entire representation would come from defendant, whereas, if it were a (3) situation, there is no such restriction and, therefore, it would appear that the attorney could accept part of his fee from the amount paid claimant

and part of his fee from the insurance company if it were so directed by the court.

This court, therefore, is compelled to make a determination that this is a (1) situation as opposed to a (3). Plaintiff has chosen to present the issues to this court by virtue of a motion for judgment on the pleadings. Defendant's pleadings clearly indicate that, and in fact, request that, a verdict be entered in favor of plaintiff so a denial of responsibility to pay at all, which would be a (3) situation, is totally inconsistent with the pleadings. For this reason alone we find that subsection (1) of Section 107 of the Act is applicable to the facts of the instant case.

This court is in possession of the affidavit of counsel concerning the number of hours spent and the general nature of the services employed in connection with plaintiff's representation, however, the court feels that it would need additional affidavits or testimony on the record concerning the hourly rate of particular counsel as opposed to the generally acknowledged hourly rate of the members of the Bar of Potter County. The court would further need an acknowledgement by counsel for plaintiff that the statutory mandate that plaintiff was to receive the entire amount of the award undiminished by attorney's fees was going to be met.

Thus, the following

## ORDER OF COURT

And now, this April 21, 1983, judgment is entered in favor of plaintiff and against defendant for the sum of $15,000 to be paid consistent with the accompanying opinion together with 18 percent interest per annum as of a date to be determined after the record is supplemented per the accompanying opinion, plus payment of reasonable attorney's fees to be specified also after supplementation of record as hereinbefore directed, plus costs of suit.