## Narzisi v. Meyer Dairy Corporation

*John D. Hoffman*, for plaintiff; *Chidsey, Maxwell & Frack*, for defendant.

STEWART, P. J., November 13, 1933.—This was a petition by the defendant for a physical and medical examination of the plaintiff, Jennie Narzisi. The petition set forth that plaintiff's statement of claim averred that she has suffered permanent injuries by reason of defendant's negligence; that the injuries suffered have interfered and will interfere with the discharge of her duties as a housewife; and that she will be compelled to pay large sums of money for future medical attendance and medicine. The petition admits that she submitted to a physical examination made at the request of the defendant on May 2, 1931. The defendant, however, asserts that it is necessary to determine what her condition now is. It also appeared that the defendant wished the examination to be conducted by two doctors, one of whom was objectionable to the plaintiff, Jennie Narzisi. The defendant insisted that it had the right to select its own doctors as they were to be witnesses on the trial.

The question now presented is, can we order a second examination, and if

we do so can we compel the plaintiff, Jennie Narzisi, to submit to be examined by defendant's doctors, or has the court a right to appoint doctors to make the examination? The decision of this court in Kunsman v. Harris, Receiver, 6 Northamp. 230, decided in 1898 is not the law. The Supreme Court has decided otherwise in Cohen v. P. R. T. Co., 250 Pa. 15. The syllabus of that case is: "While the court cannot order a plaintiff in a negligence case to submit to a physical examination against his will, it can, and when the ends of justice so require, should refuse to permit the case to proceed until the plaintiff undergoes an examination. This matter, however, is largely within the discretion of the trial court, and its action will not be reversed except in case of clear abuse."

It will be noticed from the facts referred to in the opinion of Mr. Justice Moschzisker, that "this young woman was physically examined on different occasions by two doctors representing the defendant company." On the trial, "after the plaintiff closed her case, counsel for the defendant asked the court to order another physical examination, which the trial judge declined to do; whereupon the withdrawal of a juror was requested and refused."

Again, he said: "In the present case, however, we are not convinced of abuse of discretion. Although, if sitting as a trial court, under the peculiar circumstances at bar, we might have granted the request refused by the court below, yet it appears that before the time of trial the defendant had been afforded ample opportunity for as extensive an examination of the injured woman as its physicians desired to make, and there is nothing to show that they were in any way deceived or deliberately misled by the plaintiff or her doctor when they examined her."

In Twinn v. Noble, 270 Pa. 500, the syllabus is: "The refusal of the trial court to order plaintiff to submit to a further examination, after verdict, for use on defendant's rule for a new trial, is a matter within its discretion and affords no ground for setting aside a judgment in plaintiff's favor."

In Roach v. Oswald Lever Co. et al., 274 Pa. 139, 142, Mr. Justice Walling said: "The present claimant submitted to physical examinations by physicians of the employer on two occasions, and, thereafter, the latter petitioned the referee (the case having been duly referred to him) to order the claimant placed in a hospital for a period of from ten to fourteen days, for observation and further examination, that his condition and its cause might be the more certainly ascertained."

The referee refused to do that. The Supreme Court sustained the referee, and it was said to be a matter entirely in his discretion. That case was followed in Schroth et ux. v. P. R. T. Co., 280 Pa. 36. In the lower courts, President Judge Gunnison passed on this matter in a careful opinion in Hess v. Lake Shore & Mich. Southern R. R. Co., 7 Pa. C. C. 565. That opinion seems to be the first one in this State. After referring to numerous authorities from other States, he said: "The examination should, however, be conducted in such a manner as to avoid the infliction of pain, the subjection to indignity, or the endangering of health or life. No anaesthetics, opiates or drugs should be administered. To interrogate the plaintiff as to his condition, the nature of the injury, or the manner in which it was sustained, thus, perhaps, eliciting declarations from him which may be used in evidence against him, would be highly improper, when the circumstances necessarily attending the examination are considered." Then he framed an order that was intended to express his views.

In Heilig v. Harrisburg Railways Co., 17 D. & C. 509, President Judge Har-

gest made an elaborate examination of the general subject. He did not agree with what Judge Gunnison said about not administering anaesthetics, opiates or drugs, but he did sum up the matter in these words: "The power of the court to direct a physical examination is settled in Pennsylvania. The defendant does not have the right to such examination as a matter of course. Whether it will be ordered is within the discretion of the court".

That case was most peculiar. The court ordered the plaintiff to submit to an examination. The parties agreed on a day and place for the examination. Plaintiff did not appear. A number of days were fixed for the examination, and plaintiff did not appear; then the defendant obtained a peremptory order of the court that he must appear. On that day one of the doctors, intending to use a delicate instrument called the "tonometer", put a weak solution of cocaine in plaintiff's eye. As soon as the first drop was put in, the plaintiff refused to allow anything further to be done, and left the office. Shortly afterward plaintiff died, and his administratrix was substituted as plaintiff. Judge Hargest held that the plaintiff's conduct in refusing to submit to the physical examination deprived his administratrix of the right to sue, and dismissed the action. Another careful discussion is found in Stasko et ux. v. Smith, 16 D. & C. 726. Many cases from almost all the States are cited in 10 Third Decennial Digest 206, title "Damages." It will be noticed that the whole matter is one in the discretion of the court. The power to order an examination is not exhausted by one examination. A number of examinations were held in the several cases above cited.

The request for an examination should be promptly made, and before the case is called for trial. This case will not be listed for trial before January. Where the disease is progressive, or the injuries are alleged to be permanent, the defendant ought to have an opportunity to examine again before trial, where 2 years and 6 months have elapsed since the first examination. Has the defendant a right to select the doctors? In Cohen v. P. R. T. Co., supra, the first assignment of error was the refusal "to grant the defendant's request for an examination of the plaintiff by a gynecologist selected either by the court or by the defendant". The second was the refusal to withdraw a juror. The Supreme Court said: "Both assignments of error complain of abuse of discretion, and in general concern matters largely within the control of the trial judge."

Of necessity, where the defendant makes the request, he usually selects his own doctors because they are to be his witnesses in the case, but it is within the power of the court to make the appointment if the court desires to exercise the power. It was decided in Tugman v. Riverside and Dun River Cotton Mill, 144 Va. 473, 132 S. E. 179, that the doctors are to be appointed by the court. The sensitiveness of the plaintiff should be considered as to who is to examine her. Of course, a frivolous or petty objection would not be accepted. The learned counsel for the plaintiff has stated to us the reasons why he objects to one of the defendant's doctors. We think they are good reasons, and another doctor should be selected by the defendant.

And now, November 13, 1933, it is ordered that the plaintiff, Jennie Narzisi, submit to a physical examination at such time and place as agreed on by counsel, or, on their failure to agree, by a subsequent order of the court; the examination to be conducted by two doctors selected by the defendant; in the presence of counsel for both parties and such doctors, not exceeding two in number, as the plaintiff may select.