## Sperath v. Thomas

S. A. *Litzenberger*, for plaintiffs.
*Victor S. Jaczun*, for defendants.

BIESTER, P. J., December 22, 1969.—Plaintiffs instituted this trespass action as a result of an automobile accident alleged to have occurred on January 13, 1966. On March 10, 1966, one of the plaintiffs, Gloria Sperath, the injured party, was examined by one Martin M. Blaker, M.D. The complaint was filed on January 2, 1968. On June 11, 1968, defendant filed a petition under Pa. R. C. P. 4010 seeking a second examination by Dr. Blaker and a rule to show cause why such an examination should not take place was entered on June 12, 1968. Plaintiffs replied to the rule to show cause, not objecting to a second examination but requesting that the examination be made by some physician other than Dr. Blaker.

The complaint alleges serious injuries to Mrs. Sperath and avers that she is permanently disabled. Since the accident occurred on January 13, 1966, and plaintiff has not been examined since March 10, 1966, it appears clear to us that a second examination, being within our discretion, is indicated: Matychuck v. Purnell, 11 D. & C. 2d 507; Narzisi v. Meyer Dairy Corporation, 22 D. & C. 258. In seeking an examination other than by Dr. Blaker, plaintiffs aver through their counsel that Dr. Blaker is "less than candid" and "has a tendency to be rough in handling claimants" during medical examinations. We find these bald and unsubstantiated averments insufficient to warrant our directing that the examination be made by another physician.

The other facet of this case relates to certain interrogatories filed by plaintiffs on July 29, 1968. On November 1, 1968, defendants filed answers to certain of the interrogatories and objected to others. The specific questions left for us to decide are numbered 121 through 125 which seek information respecting insurance coverage, including the name of the carrier and the amount of the policy. Plaintiffs contend that defendants have waived their right to object to the interrogatories by reason of their failure to object within 10 days of service thereof as provided by Pa. R. C. P. 4005(b) and further argue that, even if there be no waiver, defendants should be required to respond to inquiries seeking disclosure of insurance coverage.

Pa. R. C. P. 4005(b) provides:

"Within ten (10) days after service of interrogatories a party may file and serve written objections thereto. Answers to interrogatories to which objections are made shall be deferred until the objections are decided."

A careful reading of all of the various rules relating to discovery leads us to the conclusion that there is no mandate that defendants must file such objections, but rather that they may do so and that their failure to object under Pa. R. C. P. 4005(b) does not constitute a waiver.

The comments of Goodrich-Amram, §4005(b) substantiate this view. There, it is said, page 77:

"There is nothing in the Rules which would exclude the answering party from two opportunities to raise such matters. First, by making them the subject of objections. Or, secondly, if the party has omitted to raise them by objections, by a later motion."

And again, on the same page:

"The answering party may therefore ignore any such matters at the objection stage, and may raise them independently by a 'motion' for a protective order. No such matter can be held to have been waived by failure to object preliminarily . . . This necessarily covers any violation of Rule 4007 or 4011, insofar as the questioning goes beyond permissible limits. This means that this type of objection can also be ignored at the objection stage without waiver, since it can be raised by the motion for a protective order."

The same view is taken by 5 Anderson Civ. Pract., §4005.49, in which it is said:

"The rule gives a permissive right to file objections but does not declare that a party must file objections or that he will be deemed to have waived the objections if he does not do so. With certain exceptions, the failure to file objections to written interrogatories does not waive objections of the adverse party thereto and such objections may be set forth in the answer to the interrogatories. That is to say, objections to interrogatories may be made by the filing of separate objections thereto or by raising such objections in the

answers to the interrogatories. The filing of separate objections is not the exclusive method."

See also Rush v. Butler Fair and Agricultural Assn. No. 3, 17 D. & C. 2d 250 (1958); William Armstrong & Sons, Inc. v. Fox 80 Montg. 162 (1962).

Plaintiffs in their brief cite the cases of Toomey v. J. Robert Bazley, Inc., 18 D. & C. 2d 673, and Ruddy v. Pennsylvania Gas & Water Co., 36 D. & C. 2d 705. Neither of these is controlling of the issue before us, as neither suggests that objections under Pa. R. C. P. 4005(b) is an exclusive method, both cases dealing with situations in which objections were filed under that section. It is, therefore, our conclusion that the objections to the revelation of insurance coverage have been timely and appropriately filed.

The question before us, then, is whether we should align ourselves with those courts which hold that insurance coverage should be revealed, or those holding to the contrary. There are no appellate court cases in Pennsylvania dealing with this subject, a situation to be anticipated, since it is difficult to visualize circumstances by which this matter could be brought to the attention of the appellate courts. Amongst the lower courts there is a great spread of opinion and philosophy in both the Federal district courts and the courts of this Commonwealth.

Three cases have dealt with this issue in the Pennsylvania district courts and each reaches a different result. In McClure v. Boeger, 105 F. Supp. 612 (E.D., 1952), the former Chief Judge, William H. Kirkpatrick, ruled against disclosure. In the middle district of our Commonwealth a contrary result was reached by District Judge Frederick D. Follmer in Slomberg v. Pennabaker, 42 F. R. D. 8 (M.D., 1967). A third view is expressed by Chief Judge Wallace S. Gourley in Rosenberger v. Vallejo, 30 F. R. D. 352 (W.D., 1962). His compromise view is that each case

should be dependent upon its own factual situation and that no hard and fast rule should be made regarding such discovery. It was his conclusion that where liability is clear and potential damage is substantial, such disclosure should be directed, but in situations where liability is highly contested, there would be no justification for such disclosure in, at least, the early discovery stages of preparation for trial.

Amongst the cases of this Commonwealth, we find on the side of disclosure Waksman v. Walker, 44 D. & C. 2d 1 (Phila., 1968); Groce v. Hile, 46 D. & C. 2d 89 (Mercer, 1969); Berek v. Smock, 46 D. & C. 2d 221 (Mercer, 1969); and Dashem v. Morehead, 46 D. & C. 2d 563 (Centre, 1969). Taking the view that defendant should not be required to respond to such an inquiry are Covert v. Cingolani, 1 Butler 65 (1956); Howell v. Spatz, 14 D. & C. 2d 295 (C.P. Montg., 1958); and, more recently, Toogood v. Watkins, Jr., 46 D. & C. 2d 365 (C.P. Phila., 1969); Cipparone v. Kosloski, 46 D. & C. 2d 628 (C.P. Phila., 1969) and Broennle v. Stitt, 47 D. & C. 2d 644 (Armstrong, 1969).

The two cases decided and reported by our lower courts in favor of disclosure which are of much assistance are the Waksman and Groce cases. We say this because Berek v. Smock, supra, was decided after Groce by the same court and followed the former case, whereas in Dashem the court, in a very brief opinion, accepts the rationale of these cases and also that of Slomberg v. Pennabaker, supra, without further discussion.

We applaud the forthrightness of the judges who decided Waksman and Groce in that they both quite freely concede that the primary motivation in each decision is what might be called the "practical" approach, in that such a disclosure would tend to induce

settlements and, therefore, is a pertinent and relevant factor in the case. Thus, in Waksman it is said, page 3:

"We, therefore, begin our inquiry with a frank recognition that, as a matter of policy, the concealment of the fact and scope of insurance may be used to and may serve to further the cause of delay and intensify the calendar congestion." . . .

"As indicated above, we prefer that the basis of our decision be a frank recognition of both the validity and legitimacy of our conclusion that the compulsory disclosure of insurance coverage will aid in cutting into the backlog of cases which jam our dockets. We are of the opinion that the settlement process is unquestionably a part of the case process and that the courts are fully empowered to further the settlement process. In order to prepare properly for trial, an attorney must in good faith also make proper and legitimate efforts to settle."

In Groce, the court said, page 93:

"The trial of personal injury cases requires the utmost practicability. Whether a substantial verdict can be recovered is of prime concern, not after judgment is obtained, but from the time that suit is commenced. It continues through pretrial negotiations and influences the manner of preparation and trial of the case. An example of this might well be that the plaintiff would expend additional money to obtain medical experts, surveys and diagrams or other evidence favorable to his cause if he knows that there is ample coverage. All of this has great practical relevancy in the preparation and evaluation of the case."

The court concludes that the information sought should be available by discovery and noted, although Mercer County is not suffering from court congestion like Philadelphia, the problem might well arise in the future.

In McDonald v. Gross, 47 D. & C. 2d 68, Mercer County was asked, in light of the Groce opinion, to pass upon the question as to whether the right of discovery should be extended where there was no insurance coverage to an inquiry as to the nature and amount of defendant's assets. The court ruled against such an extension and referring to Groce, said, page 72:

"Admittedly, the ruling of the local court is one based on practicality and was brought about by the need to expedite the trial of trespass cases. It is the opinion of this court that the divulgence of insurance coverage in a trespass case materially aids in the preparation of the case by plaintiff and encourages both plaintiff and defendant to make a realistic appraisal of the value of their case, and to effect a settlement more readily than would be the case if such disclosure is not required."

In Clark v. Loughery, 56 Del. Co. 297 (1969), the Delaware County court went further than any other case and concluded that, although insurance was disclosed, defendant should also be required to reveal his assets and net worth so that counsel could arrive at a settlement figure. The court there said, page 299:

"Although the defendant's net worth cannot be used at trial, knowledge of it by the plaintiffs, before trial, and a realization on the part of the defendant that it will have to be disclosed before trial, may go a long way toward realistic settlement negotiations, which could mean that there never will be a trial."

It is rather obvious from a reading of these cases favoring disclosure that much greater emphasis has been placed on the settlement factors than on the interpretation and construction of the procedural rules.

It appears to us that, although Pa. R. C. P. 4005, 4007 and 4011 are interrelated, we must focus our attention on the wordage of Pa. R. C. P. 4007 in order

to determine whether such disclosure should be directed. That rule provides that any deponent may be examined regarding any matter not privileged which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings, or the preparation or trial of the case.

It follows that to justify disclosure of insurance coverage it is required that such information should be disallowed unless it satisfies all of these requirements.

On the question of relevancy and its interpretation, we are convinced from the reading of a number of cases on this subject and the comments of Goodrich-Amram that any doubt should be resolved in favor of such relevancy, and that we cannot equate "relevancy" with demonstrably unobjectionable testimony for its scope is somewhat broader. However, we also accept the statement made by Goodrich-Amram, §4007(a)-18, p. 117, that:

"The standards of relevancy must be those which will apply at the trial."

The rule itself specifically states that it "must be relevant to the subject matter involved in the action" and it appears to us that the subject matter referred to relates to the issues which are conceivably or potentially pertinent to the trial itself, the purpose of which is to determine liability and the extent thereof. Under such a concept, we fail to comprehend how the extent of insurance coverage is relevant to the subject matter.

True, in Slomberg, supra, at pages 11-12, the court observes:

"The primary argument that is advanced against discovery is that such discovery is not relevant to the issues of the case nor can it reasonably lead to discovery on any relevant issue . . . This contention has been answered by stating that if the insurance

question is relevant after the plaintiff prevails, it is relevant while the action pends."

We regard such a rationale as parrying the problem of interpretation of the phrase "relevant to the issues" and, neatly avoiding the resolution of the question, in substance stating that the subject matter, or issue, is not only the suit in controversy, but whatever may become relevant to the action thereafter. We cannot agree.

Plaintiffs must not only establish the relevancy of inquiry but, in addition, must demonstrate that such information will substantially aid in the preparation or trial of the case. We must agree that knowledge of the existence of substantial coverage will assist counsel in determining how much money should be expended, especially in relationship to the number and expertise of the witnesses to be called, but this involves the extent of the preparation rather than aiding in the preparation. We are convinced that a lawyer should, and most practitioners do, devote their maximum skill and learning to any case and are reluctant to adopt a theory which, in effect, concludes that a lawyer will exert less than his best efforts in any case in which he is employed to represent a client. True, we must agree, that, from a practical standpoint, the amount of money to be expended for witnesses is important not only to the attorney but his client. However, we are not satisfied that this factor alone is sufficient to justify our concluding that the rule of substantial assistance should be so stretched as to require the revelation of the extent of insurance coverage.

Although there are several cases which rely on such information as being privileged, we regard the word "privileged" as used in the rules as a word of art and limited in its classical meaning to such matters as privilege against self-incrimination, the professional

relationship of physicians or counsel, matters against public interest and like situations. The revelation of assets in appropriate proceedings is not protected by this concept of privilege, nor does it forbid disclosure of insurance when otherwise relevant.

We see no occasion to cite the many cases dealing with this subject throughout the United States, this having been thoroughly done in Toogood v. Watkins, Jr., supra. We do, however, accept the rationale of that case, except insofar as it relies on the theory that disclosure of insurance is privileged. The following quotations are particularly pertinent, page 387:

"From the standpoint of logic, the arguments are overwhelmingly against discovery. The fact of insurance is inadmissible in evidence. Even under the Federal rules, broader than our own, it cannot possibly lead to the eliciting of admissible evidence. Nor can it be deemed relevant to the issues in the case except by stretching 'relevant' and 'issues' far beyond their inherent meanings. Nor is it necessary to drafting of pleadings, or to the preparation for trial, or to the conducting of the trial; indeed, at the trial its disclosure to a jury would cause a mistrial."

And again, from the same opinion, page 388:

"To use the rules for the fostering of compromises is to wrench them out of semblance to their intent. Encouraging settlements undoubtedly is a worthy enterprise, and one to which we subscribe wholeheartedly; . . . but there are fully proper ways to conduct that enterprise, and twisting the discovery rules is not one of them. If it be the wish of the courts in any jurisdiction that insurance coverage become a subject of discovery, they should take the direct step of amending the rules clearly and specifically to that end. They should not seek to accomplish their wish by indirection and by an illogical misapplication of the existing discovery rules."

It is the conclusion of the majority of this court that the Pennsylvania Rules of Civil Procedure do not justify their directing the disclosure sought for. It may be noted that three of the members of this seven-man court do not concur in this decision. We respect our colleagues' right to dissent and agree that a number of cases support their position. Such a situation demonstrates the divergence of opinion amongst the judges of the courts of this Commonwealth and accentuates the necessity of a prompt, clarifying amendment to the Pennsylvania Rules of Civil Procedure. Attorneys and parties litigant are entitled to reasonably uniform treatment, which should not depend upon interpretations and philosophies of a particular court or its individual members.

## ORDER

And now, December 22, 1969, the prayer of the petition requiring that Gloria Sperath, one of the above-named plaintiffs, submit herself for an orthopedic examination by Dr. Martin A. Blaker, is hereby allowed and the rule to show cause granted thereon made absolute. The prayer of the petition requesting that the court compel answers to interrogatories nos. 121 to 125, inclusive, is hereby denied and refused and the rule to show cause granted thereon discharged.

## DISSENTING OPINION

GARB, J., December 22, 1969.—I most respectfully dissent from that portion of the majority opinion refusing plaintiffs' petition to compel answers to their interrogatories regarding disclosure of insurance and policy limitations. I find the reasoning and logic of those cases requiring the disclosure of this information to be the more compelling in this regard, and I would

join in their conclusion. See Groce v. Hile, 46 D. & C. 2d 89 (1969); Berek v. Smock, 46 D. & C. 2d 221 (1969); Dashem v. Morehead, 46 D. & C. 2d 563 (1969); Landkammer v. O'Laughlin, 45 F.R.D. 240 (S.D. Iowa, 1968); Cuellar v. Hamer, 45 F.R.D. 245 (W.D. Mich., 1968); Ellis v. Gilbert, Hall, 429 P. 2d 39 (Utah, 1967); Cook v. Welty, 253 F. Supp. 875 (D.C., 1966).

The difference in philosophy reflected, if one there be, between this opinion and that of the majority is merely one regarding the breadth of the discovery rules. Clearly, if the rules are to be liberally construed (see Pa. R.C.P. 126), we must consider, inter alia, the circumstances under which the rule was promulgated, the mischief to be remedied by the rule, the object to be obtained, the consequences of that particular interpretation (see Pa. R.C.P. 127), and at the same time presume that the Supreme Court intends to favor the public interest as against any private interest (see Pa. R.C.P. 128). The practical result, in my opinion, of the disclosure of policy limits is to effectuate the settlement of negligence cases. Clearly, where the damages are slight, plaintiff in all probability will not be concerned with policy limits and by the same token, the insurance carrier would have no particular objection to disclosure. Where the injuries are great, however, the disclosure of policy limits affords plaintiff one additional and very important factor of consideration in determining the settlement value of his case. Armed with such knowledge, the plaintiff is much better prepared to determine the type and extent of preparation required for trial or the degree of compromise necessitated for purposes of settlement. These considerations are entirely consistent with the rules of construction as set forth in Pa. R.C.P. 127 and clearly favor the public interest in settling cases as opposed to the private interest of secrecy of the insurance

companies, as mandated by Pa. R.C.P. 128. I do not believe that this conclusion requires a strained construction of Pa. R.C.P. 4007. I believe that this information is relevant to the subject matter of the law suit, although not necessarily evidentially relevant at the time of trial, and substantially aids in preparation for trial as has been heretofore explicated.

I do wholeheartedly concur in the last paragraph of the majority opinion. If, however, there cannot be certainty in the law in this regard, there should at least be certainty in the amount of insurance coverage available.