**David BADYRKA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CLARKS SUMMIT STATE HOSPITAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 26, 1999.

Decided May 4, 1999.

Thomas E. Lucas, Jr. and Todd J. O'Malley, Scranton, for petitioner.

Joseph M. Caputo, Scranton, for respondent.

Before FRIEDMAN, J., LEADBETTER, J., and LORD, Senior Judge.

FRIEDMAN, Judge.

David Badyrka (Claimant) appeals from an order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to suspend Claimant's workers' compensation benefits as of March 17, 1993. We reverse.

Claimant is a certified psychiatric nurse who worked for Clarks Summit State Hospital (Employer) as a registered nurse/head nurse. On December 6, 1987, Claimant sustained a work-related injury when a patient struck him on the back of the head and neck. (WCJ's Findings of Fact, Nos. 4, 8; R.R. at A99–A100.) Claimant continued to work after the incident but became disabled on December 21, 1987 as a result of neck pain, headache pain and the side effects of his pain medication. (R.R. at A101–A102.)

Claimant tried to return to his job in January 1988, working only four hours per day, but Claimant became totally disabled again in February 1988. (R.R. at A102–A103, A349–A350.) In May 1988, Claimant was able to return to work with no loss of earnings, but Claimant's disability recurred periodically during 1990 and 1991. (R.R. at A351–A355.) Claimant became totally disabled once again in November 1991 due to headache pain and the side effects of his pain medication.[1] (R.R. at A103–A104.) Claimant has not returned to work since then.[2] (R.R. at A104.)

Peter A. Feinstein, M.D., a Board-certified orthopedic surgeon, examined Claimant for Employer on February 18, 1993. (R.R. at A260.) Claimant described to Dr. Feinstein a history of neck pain, which had resolved, and ongoing headaches. Dr. Feinstein noted that x-rays of Claimant's neck revealed a fracture of the posterior spinous process of C–7. Upon examination,

1. Claimant's medication affects his ability to think and function. However, Claimant is able to drive a car and to perform light cleaning around the house. Claimant is also able to play pool several times a week. (WCJ's Findings of Fact, No. 8.)

2. Since November 1991, Claimant has received benefits pursuant to a supplemental agreement. (R.R. at A105, A355.)

Dr. Feinstein found no tenderness at C–7, no evidence of instability in the rest of Claimant's cervical spine and an asymptomatic fibrous union in the area of the fracture. Dr. Feinstein opined that Claimant's fracture at C–7 had healed and that, orthopedically, Claimant had no restrictions and was able to return to work. However, Dr. Feinstein's evaluation of Claimant did not address Claimant's ongoing headaches.[3] (WCJ's Findings of Fact, No. 6; R.R. at A252, A270–A272.)

By letter dated March 10, 1993, Employer informed Claimant that Dr. Feinstein had reviewed Claimant's job description and had approved Claimant's return to work in his former position without restrictions. Employer asked Claimant to report to his pre-injury job on March 17, 1993; however, Claimant did not report for work.[4] (WCJ's Findings of Fact, Nos. 8, 13(d); R.R. at A251.)

In April 1993, Employer filed a suspension petition, alleging that Dr. Feinstein had released Claimant to return to work and that work was available within Claimant's restrictions. (*See* S.R. at A1.) Claimant filed an answer denying those allegations. (*See* S.R. at A2.) On June 2, 1993, a referee issued a decision disposing of Employer's petition as follows: "At the request of counsel for the defendant the suspension petition is hereby withdrawn." (*See* S.R. at A4.)

On November 23, 1993, Seth Jones, M.D., who is Board-certified in neurology and nerve physiology, with added qualifications in neurophysiology, examined Claimant for Employer and determined that Claimant could return to work in his pre-injury job. On April 25, 1994, Employer filed a petition to terminate, modify or suspend Claimant's benefits as of November 22, 1993. Based on Dr. Jones' evalua-tion of Claimant, Employer alleged that Claimant had fully and completely recovered from any work-related injury and that Claimant had been released to return to work without restriction or residual disability. Claimant filed an answer denying the allegations, and hearings were held before the WCJ. (WCJ's Findings of Fact, Nos. 1–2, 5.)

At the hearings, Employer presented the medical testimony of Dr. Feinstein and Dr. Jones. Dr. Jones described his examination of Claimant, stating that Claimant complained of headaches in the back of his head that began after his December 1987 work injury. Dr. Jones noted that Claimant's MRI and CT scans were normal and that Claimant's x-rays revealed a healed fracture at C–7. Dr. Jones testified further that, upon examination, he found no deficit in Claimant's cognitive function, normal vision and eye movement, normal facial movement and sensation, normal coordination and walking, symmetric reflexes and no evidence of neurological lesion. Dr. Jones opined that Claimant did not suffer from occipital neuralgia and that Claimant's headaches were not the type that would be caused by a fracture at C–7. Dr. Jones explained that problems in the area of the seventh vertebra tend to radiate to the arms, not to the back of the head. Thus, Dr. Jones opined that Claimant's headaches were not work-related[5] and that Claimant was capable of returning to his pre-injury job. (WCJ's Findings of Fact, No. 7.)

Claimant testified on his own behalf and presented the medical testimony of Stephen D. Silberstein, M.D., a Board-certified neurologist. Dr. Silberstein began treating Claimant on November 29, 1994 for daily headaches at the back of his head

---

3. Dr. Feinstein did not attempt to diagnose Claimant's headache complaints, and his opinion regarding Claimant's ability to return to work did not consider Claimant's complaints of headaches. (R.R. at A273.)

4. Claimant informed Employer that he was unable to perform his job duties. (R.R. at A69, A71–A72.)

5. Dr. Jones also testified that Claimant's headache pain was not real. (R.R. at A298–A299, A314–A315.)

on the left side. Upon examination, Dr. Silberstein noted a decreased range of motion in Claimant's neck and a tender spot at the left occipital area. Dr. Silberstein opined that Claimant suffers from occipital neuralgia as a result of his work injury. Dr. Silberstein explained that the trauma of Claimant's work injury aggravated his brain tissue and caused a change in the nature and chemical composition of Claimant's tissues that affected Claimant's pain control centers and caused his headaches. Dr. Silberstein opined that from a neurological standpoint, Claimant is unable to work. (WCJ's Findings of Fact, No. 9.)

After considering the evidence presented, the WCJ accepted Claimant's testimony that he suffered from continuing headache pain as a result of the work injury and, thus, found that Claimant has *not* fully recovered from the work injury. However, the WCJ accepted Dr. Feinstein's opinion that Claimant's fracture of the C–7 vertebra had healed and that Claimant suffered no residuals from the fracture. The WCJ also accepted Dr. Jones' opinion that Claimant is capable of performing his pre-injury position with no neurological restrictions. Based on these credibility determinations, the WCJ suspended Claimant's benefits. However, instead of suspending benefits as of November 22, 1993 as Employer requested, the WCJ suspended Claimant's benefits as of March 17, 1993 based on Dr. Feinstein's testimony. (WCJ's Findings of Fact, Nos. 10–13; WCJ's op. at 6–7.) Claimant appealed to the WCAB, which affirmed the decision of the WCJ.

On appeal to this court,[6] Claimant first argues that the WCJ, affirmed by the WCAB, erred in using March 17, 1993 as the effective date of the suspension of Claimant's benefits. (*See* Claimant's brief at 18.) We agree.

This court has held that a WCJ "is empowered to grant only such relief as the employer actually requests;" a WCJ may not *sua sponte* grant a termination of benefits where the employer requested only a modification of benefits. *Foyle v. Workmen's Compensation Appeal Board (Liquid Carbonic I/M Corp.)*, 160 Pa.Cmwlth. 534, 635 A.2d 687, 690 (1993), *appeal denied*, 538 Pa. 660, 648 A.2d 791 (1994). Allowing the WCJ to grant more relief than the employer has requested "is prejudicial to the claimant, who, never having been put on notice that the employer seeks such relief, has no opportunity to defend against it." *Id.*

Here, Employer's petition only sought to alter Claimant's benefits as of November 22, 1993. In support of its petition, Employer presented the medical testimony of Dr. Jones, a neurologist who examined Claimant on November 22, 1993 and who stated his expert medical opinion regarding Claimant's ability to return to his pre-injury job "as of the time of [the November 22, 1993] exam." (R.R. at A298.) Thus, Claimant had no notice that Employer might have been seeking a suspension of benefits as of March 17, 1993 and no opportunity to defend against a suspension on that earlier date. For these reasons,[7]

6. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

7. Moreover, we agree with Claimant's argument that the record lacks substantial evidence to support a finding that Claimant could return to his pre-injury job on March 17, 1993. With regard to that date, Dr. Feinstein provided the only medical testimony re-

garding Claimant's ability to return to his pre-injury job. Dr. Feinstein testified that Claimant's C–7 fracture had healed and that from an *orthopedic* standpoint, Claimant could perform his pre-injury job. (R.R. at A270–A272.) However, Dr. Feinstein would not comment on Claimant's headaches or their etiology because "orthopedists are not considered experts or treating physicians as far as headaches are concerned." (R.R. at A256.) Thus, Employer presented *no* expert testimony to address whether Claimant's headaches, which the WCJ found to be related to his work injury, would prevent him from returning to

we conclude that the WCJ erred in suspending Claimant's benefits as of March 17, 1993.

Claimant next argues that a suspension of benefits as of November 22, 1993, or as of some subsequent date, is not appropriate here because even if Employer successfully established Claimant's ability to return to work, Employer failed to establish that Claimant's pre-injury job was available to him on or after November 22, 1993. We agree that the WCJ erred in suspending Claimant's benefits.

In seeking a suspension of benefits based on the claimant's ability to return to work without a loss of wages, the employer has the burden of establishing that a position is available at the time the claimant is given medical clearance to return to work.[8] *Latrobe Steel Company v. Workmen's Compensation Appeal Board (Henderson)*, 150 Pa.Cmwlth. 583, 616 A.2d 106 (1992). Based on the record here, Dr. Jones first effectively communicated to Employer that Claimant could resume his pre-injury job duties on March 31, 1994, not November 22, 1993.[9] Thus, pursuant to our holding in *Latrobe*, Employer had to establish that Claimant's pre-injury job was available on

or after March 31, 1994. Here, however, the WCJ found only that Claimant's pre-injury job was available to him on March 17, 1993. Employer presented no evidence to establish that Claimant's pre-injury job remained available to him on or after March 31, 1994.[10] Therefore, a suspension of benefits is not appropriate.

Accordingly, we reverse.

*ORDER*

AND NOW, this 4th day of May, 1999, the order of the Workers' Compensation Appeal Board, dated October 14, 1998, is reversed.

Judge LEADBETTER dissents.

---

his pre-injury job on March 17, 1993. Absent such expert testimony, the record lacks substantial evidence to support a finding that Claimant could perform his pre-injury job on March 17, 1993.

8. Once the employer establishes job availability, the burden shifts to the claimant to show that he followed through on the job referral in good faith. *Latrobe Steel Company v. Workmen's Compensation Appeal Board (Henderson)*, 150 Pa.Cmwlth. 583, 616 A.2d 106 (1992). Thus, it is critical that the employer informs the claimant that a particular job is available; without that vital information, the claimant could not be expected to pursue the position. *Id.*

9. Here, the WCJ accepted Dr. Jones' testimony that Claimant could return to his pre-injury job as of November 22, 1993. However, Dr. Jones did not express this opinion in his initial medical report to Employer. Dr. Jones stated only that: "It seems as though [Claimant] should be able to find employment in which he would not be a danger to others."

(R.R. at A335.) This statement prompted Employer to request clarification. On March 31, 1994, Dr. Jones issued a second report informing Employer for the first time that Claimant could perform his pre-injury job duties. (R.R. at A331–A332.) Thus, although Dr. Jones testified that Claimant could return to his pre-injury job as of November 22, 1993, this was not clear to Employer until March 31, 1994. Employer filed its petition to terminate, suspend or modify Claimant's benefits on April 25, 1994.

10. Employer argues that because it never withdrew its March 17, 1993 job offer, Claimant knew, or should have known, that his pre-injury job was still available to him. We disagree. Because Claimant did not have medical clearance to return to his pre-injury job on the date that job was offered, the question of job availability never arose. On March 31, 1994, when Claimant received medical clearance from Dr. Jones to return to his pre-injury job, Employer had to inform Claimant that his pre-injury job was available.