**DiGiacinto v. Obelinas**

*Michael A. Snover*, for plaintiff.
*Kevin M. Higgins*, for defendants.

NEALON, *J.*, April 17, 2014—

The plaintiff in this personal injury action has filed a *de novo* appeal of the special discovery master's ruling under Pa.R.C.P. 4010 requiring him to submit to two physical examinations by different physicians chosen by the defense. The discovery master found that the defense had established "good cause" for separate examinations by distinct medical specialists since plaintiff's cervical disc injury and bilateral carpal tunnel syndrome allegedly

involve conditions that are treated by different specialists. Plaintiff argues that his injuries are orthopedic in nature and can be properly evaluated by a single physician who conducts one physical examination on behalf of the defense.

Cervical disc injuries and carpal tunnel syndrome are not the exclusive domain of distinct medical disciplines and do not necessitate independent assessments by different specialists. The defense may retain either an orthopedic surgeon or a neurosurgeon to perform a single examination of plaintiff and effectively evaluate his cervical disc and carpal tunnel injuries in the process. The fact that plaintiff has received treatment for those injuries from two separate orthopedic surgeons is of no consequence and does not warrant subjecting plaintiff to the burden of two examinations under Rule 4010. Consequently, plaintiff's *de novo* appeal will be granted and the defense request to compel plaintiff to submit to two medical examinations by different physicians will be denied.

## I. FACTUAL BACKGROUND

On December 10, 2007, plaintiff, Thomas F. DiGiacinto ("DiGiacinto"), was involved in a motor vehicle accident with defendant, Ralph C. Obelinas ("Obelinas"), as both parties were travelling in a southerly direction on Route 476, Montgomery County. (Docket entry no.5 at ¶¶ 4-5; Docket entry no.8 at ¶¶ 4-5). At the time of the accident, Obelinas was acting within the course and scope of his employment with defendant, Nivert Metal Supply, Inc. ("Nivert"). (*Id.* at ¶¶ 2-3). DiGiacinto filed suit against Obelinas and Nivert seeking to recover economic and noneconomic damages for "severe bodily injuries, including, but not limited to, neck and left shoulder injuries" causing "great mental anguish and physical

pain." (Docket entry no.5 at ¶¶ 10-12).

According to the medical records that have been produced during discovery, DiGiacinto was originally treated by Neal A. Stansbury, M.D., of Valley Sports & Arthritis Surgeons ("VSAS"), for his accident-related orthopedic injuries. Dr. Stansbury initially diagnosed DiGiacinto with "left shoulder strain, aggravation of pre-existing degenerative disc disease and carpal tunnel syndrome." (Docket entry no. 31 at ¶¶ 7, 12; Docket entry no. 32 at ¶¶ 7, 12 & exhibits A, D). Dr. Stansbury provided ongoing treatment to DiGiacinto for his left shoulder and bilateral wrist complaints, but referred him to one of his twelve VSAS partners, Amir H. Fayyazi, M.D., for evaluation of his cervical symptoms. (*Id.*). Dr. Stansbury performed a right carpal tunnel release on DiGiacinto in April 2008 and a left carpal tunnel release in June 2008. (*Id.* at Exhibit D).

Dr. Fayyazi diagnosed DiGiacinto's cervical injury as "an aggravation of a pre-existing cervical degenerative disc disease" causing "nerve root compression." (*Id.* at ¶¶ 9, 11 & exhibit C). On July 31, 2008, Dr. Fayyazi performed an "anterior cervical discectomy and fusion at [the] C3-4" vertebral level "for treatment of C3-4 nerve root compression." (*Id.* at p. 3). In addition, DiGiacinto has been diagnosed with accident-related depression for which he has received psychiatric treatment. (Docket entry no. 31 at ¶ 6; Docket entry no. 32 at ¶6).

Defense counsel sought to schedule physical and mental examinations of DiGiacinto pursuant to Pa.R.C.P. 4010, and forwarded a letter to DiGiacinto's counsel requesting his concurrence with the scheduling of three such examinations: (1) a physical examination by one physician "to address the carpal tunnel issues;"

(2) "[a] second examination...with a different physician to address the alleged cervical spine issues;" and (3) a third examination "to address any psychological/psychiatric issues." (Docket entry no. 31 at ¶17; docket entry no. 32 at ¶ 17 & exhibit A). DiGiacinto has agreed, through his counsel, to submit to a "mental examination" under Rule 4010 in connection with his depression claim, but has objected to two "physical examinations" by separate physicians for his cervical, left shoulder and carpal tunnel injuries on the grounds that those "conditions are orthopedic in nature" and can be evaluated by the same physician. (Docket entry no. 31 at ¶¶6, 23; docket entry no. 32 at ¶¶ 6, 23 & exhibit B). Obelinas presented a "motion to compel independent medical examinations" to the special discovery master, who granted that motion and ordered DiGiacinto to submit to one "medical examination related to his alleged cervical spine injuries" to "be performed by a medical professional of defendants' choosing," and to present himself to a separate "medical professional of defendants' choosing" in order to undergo a second "medical examination related to his general orthopedic issues involving allegations of bilateral carpal tunnel and left shoulder complaints."[1] (Docket entry no. 32 at pp. 1-2).

DiGiacinto filed a *de novo* appeal of the discovery master's order directing him to submit to two medical examinations with respect to his cervical, left shoulder and carpal tunnel injuries. (Docket entry no. 33). Noting that Rule 4010(a)(3) empowers a court to order a party to submit to a physical or mental examination "only on

---

1. Pursuant to Lacka. Co. R.C.P. 4000.1, discovery motions must initially be presented to and decided by the court-appointed discovery master whose ruling "may be appealed *de novo*'" to the court of common pleas within ten days of the master's decision. *Fratzola v. Klepadlo*, 26 Pa. D. & C. 5th 533, 537-538 (Lacka. Co. 2012).

motion for good cause shown," DiGiacinto maintains that the defense has not demonstrated good cause for multiple medical examinations "[m]erely because [DiGiacinto] had surgeries performed by two different orthopedic surgeons" in the same practice group. (Docket entry no. 38 at p. 3). He posits that "[t]here is absolutely no reason why a single orthopedic [examiner] cannot address both orthopedic injuries in this case." (*Id.* at p. 9). DiGiacinto further submits that Rule 4010 contemplates only a single examination "as a *per se* rule," and that "extrapolating expansion of principles which would result in additional or more extensive invasions of [DiGiacinto's] bodily privacy" is not warranted. (*Id.* at p. 14).

In support of their request for two physical examinations of DiGiacinto under Rule 4010, Obelinas and Nivert argue that "[b]ecause [DiGiacinto] required two separate and distinct specialists to address the carpal tunnel and cervical spine issues, [Obelinas and Nivert] should be permitted an equal and fair opportunity to address the same allegations in the same fashion." (Docket entry no. 36 at p. 8). Obelinas and Nivert assert that they should be allowed to retain separate medical witnesses to address those orthopedic injuries, and reason that "[t]o limit the defendants to one physical injury examination would require the defendants to locate one medical expert who is appropriately qualified in both carpal tunnel surgeries and cervical spine surgeries." (*Id.* at p. 10). Following the completion of oral argument on April 7, 2014, DiGiacinto's discovery appeal became ripe for disposition.

## II. DISCUSSION

### (A) MEDICAL EXAMINATION CRITERIA UNDER Pa.R.C.P. 4010

Pennsylvania Rule of Civil Procedure 4010(a)

authorizes a trial court to order a party "to submit to a physical or mental examination" by a licensed physician, dentist or psychologist whenever the mental or physical condition of the party "is in controversy" in the case. Pa.R.C.P.4010(a)(1)-(2). As per the plain language of Rule 4010(a)(3), the court may order such a physical or mental examination "only on motion for good cause shown." Pa.R.C.P.4010(a)(3). *See also Willis v. Bigus*, 2012 WL 8898049, at \*4 (Lacka. Co. 2012). The requirement of "good cause" under Rule 4010(a) is designed "to ensure that a party's privacy is not unduly invaded," *Uhl v. C.H. Shoemaker & Son, Inc.*, 432 Pa. Super. 230, 234, 637 A.2d 1358, 1360 (1994), and to "preclude the use of such an examination for improper purposes." *McGratton v. Burke*, 449 Pa. Super. 597, 601-602, 674 A.2d 1095,1097 (1996), *app. denied*, 546 Pa. 667, 685 A.2d 546 (1996). The determination of whether "good cause" exists under Rule 4010 is committed to the sound discretion of the trial court. *John M. v. Paula T.*, 524 Pa. 306, 312, 571 A.2d 1380, 1383 (1990), *cert. denied*, 498 U.S. 850 (1990); *McGratton*, 449 Pa. Super. at 601,674 A.2d at 1097.

DiGiacinto concedes that the defense has demonstrated "good cause" for a physical examination of his neck, left shoulder and carpal tunnel injuries. He further agrees that the requisite cause exists for a separate "mental examination" in conjunction with his depression claim. The parties disagree, however, on the issue of whether DiGiacinto must submit to two physicial examinations under Rule 4010.

(B) MULTIPLE EXAMINATIONS UNDER Pa.R.C.P. 4010

Rule 4010 is silent on the number of medical examinations to which a party may be subjected. *See* 9

Goodrich-Amram 2d § 4010(a): 19, at 412 (2d ed. 2008); 7 Standard Pennsylvania Practice 2d § 37:22, at pp. 166-67 (2009). Although Rule 4010 "does not specifically permit or prohibit more than one examination of a plaintiff,...a defendant bears a heightened burden of demonstrating good cause for a supplemental medical examination." *Lodolce v. Township of Roaring Brook*, 99 Lacka. Jur. 54, 57 (1998). The grant or denial "of more than one examination is a matter wholly within the discretion of the court," which "may prevent a second or third physical examination if there is really nothing new to be discovered" and "the device is being used to put pressure on the plaintiff to settle." *Matychuck v. Purnell*, 11 Pa. D. & C. 2d 507, 508 (Montg. Co. 1957) (quoting Goodrich-Amram, Vol. 4 at pp. 192, 203).

There is a paucity of reported case law addressing requests for multiple examinations under Rule 4010, and most of those decisions concern instances where a second examination of the plaintiff was demanded by the defense *after* the plaintiff had already undergone an earlier examination. Some trial courts have required plaintiffs to submit to a second examination under Pa.R.C.P. 4010 if a significant period of time has elapsed since the date of the original medical examination.[2] *See, e.g., Edelstein v. Tipton*, 69 Pa. D. & C. 2d 248, 250 (Phila. Co. 1974) ("In light of the length of time since the initial examination, and the continuing nature of the injury, a second examination is justified."); *Sperath v. Thomas*, 48 Pa. D. & C. 2d 309, 310 (Buck Co. 1969) ("Since the accident occurred on

---

2. Prior to the adoption of the first version of Rule 4010 on June 1, 1951, one lower court granted a defense request for two medical examinations, and reasoned that "[w]here the disease is progressive, or the injuries are alleged to be permanent, the defendant ought to have an opportunity to examine again before trial, where two years and six months have elapsed since the first examination." *Narzisi v. Meyer Dairy Corp.*, 22 Pa. D. & C. 258, 260 (Northampton Co. 1933).

January 13, 1966, and the plaintiff has not been examined since March 10, 1966, it appears clear to us that a second examination being within our discretion, is indicated."). Other courts have declined to grant requests for a second examination where the defense has simply argued that "something new might be discovered" during another examination. *See White v. Wasko*, 57 Luz. Leg. Reg. 261, 264 (1967) (stating that defense contention "that the re-examination by [the defense medical witness] may result in something new being discovered is at best a weak reason for the requested examination," and denying motion for second examination on basis "that it would cause plaintiff unreasonable annoyance and embarrassment."). Accord *Farmer v. Supermarkets General Corp.*, 10 Pa. D. & C. 4th 500,503 (Phila. Co. 1991) ("Rule 4010 does not authorize a defendant to obtain *successive* physical examinations of a plaintiff until the defendant eventually obtains an expert's report that makes him 'happy'")(emphasis in original).

The Court of Common Pleas of Lackawanna County first addressed the issue of multiple examinations under Rule 4010 in *Lodolce, supra*, where the defense request for a re-examination was predicated upon the fact that more than two years had passed since the date of the defense expert's original examination of the plaintiff. *Lodolce*, 99 Lacka. Jur. at 56. In that case, we noted that courts "may permit an additional examination if subsequent discovery reveals that the plaintiff is alleging a new injury since the date of the initial examination, or deliberately concealed an injury at the time of the first examination." *Id.* at 57; *see also* 9 Goodrich-Amran 2d, *supra*, at p. 412 (stating that a second examination may be warranted if plaintiff's discovery responses "disclose a claim for an injury which was not originally asserted and which was not inquired into by the physician at the first examination," or "where an

injury was deliberately concealed at the first examination and was subsequently discovered by the moving party."). We observed that "[i]n those unusual instances in which consecutive examinations have been allowed, exceptional circumstances have existed to justify the inconvenience and additional burden to the plaintiff." *Lodolce*, 99 Lacka. Jur. at 57. Although more than two years had elapsed since the defense expert had examined Lodolce and concluded that his accident-related injuries had resolved, Lodolce had not developed a new injury in the interim, nor had he withheld any information about his injuries at the time of his first examination. *Id.* at 58-59. As a result, we held:

> After considering the defendants' purported need for an additional examination by [defense medical witness], and weighing it against [Lodolce's] right to be protected against unwarranted invasions of his privacy and the inconvenience that [Lodolce] will experience if he is required to submit to another examination of questionable value, we conclude that defendants have not established "good cause" for a supplemental examination under Pa.R.C.P. 4010(a).

*Id.* at 59.

Other Lackawanna County jurists have applied the foregoing standard articulated in *Lodolce* when considering defense requests for serial examinations under Rule 4010. DiGiacinto references three reported decisions in which Judge Carmen D. Minora cited the criteria set forth in *Lodolce* and denied the defense motions seeking additional examinations. *See, e.g., Judge v. Solid Waste Service, Inc.*, 41 Pa. D. & C. 4th 225,234-236 (Lacka. Co. 1999) (quoting *Lodolce* and refusing request for second examination since there was "no indication that plaintiff has alleged any new injuries or deliberately

concealed an injury" and "no evidence of any exceptional circumstances to justify the inconvenience and additional burden of having plaintiff undergo more than one IME."); *Wilczynski v. Lackawanna County Multi-Purpose Stadium Authority*, 42 Pa. D. & C. 4th 337, 344-345 (Lacka. Co. 1999) (quoting *Lodolce* and denying defense request for second examination because "[t]here is no suggestion in the defendant's motion that the plaintiff withheld any medical history or information from [defense medical examiner] or...any indication in the defendant's motion that the plaintiff has developed a new injury."); *Driscoll v. Walker*, 52 Pa. D. & C. 4th 316,321-323 (Lacka. Co. 2001) (citing "heightened scrutiny" test in *Lodolce* and holding that defendant in tort case and employer in workers' compensation proceeding, who were both represented by the same defense counsel, would be limited to "only one comprehensive omnibus independent medical examination addressing all the injuries flowing from both the auto accident herein and the workers' compensation injury."). Obelinas and Nivert rely upon the unpublished opinion in *Mehall v. Benedetto*, No. 09 CV 5849 (Lacka. Co. Aug. 9, 2012), where Judge Robert A. Mazzoni upheld the special discovery master's order requiring the plaintiff to submit to a re-examination by the defense medical expert.

In *Mehall*, "[n]either plaintiff's complaint nor his amended complaints identif[ied] a foot injury" and merely asserted "lumbar injuries" resulting from his automobile accident on September 10, 2007. *Id.* at pp. 1-2 & n. 1. By the time of his discovery deposition on April 27, 2010, the only medical records that had been produced by Mehall were the office records of Dr. Mark Micciche, and "[a]ccording to Dr. Micciche's discharge notes, [Mehall] was allowed to return to full work activity shortly after the accident, more particularly on November 28, 2007. *Id.* at p.

2. Almost three and one-half years following his discharge without restriction, Mehall "returned to Dr. Micciche on April 11, 2011, for treatment of his foot," and for "the first time" was diagnosed as "suffering from post-traumatic arthritis in his left foot. *Id.* However, Mehall "failed to seasonably supplement defendants' requested discovery, as required by Pa.R.C.P. 4007.4," prior to the defense medical examination of him on July 21, 2011, as a result of which that examination "focus[ed] on [Mehall's] alleged back injuries." *Id.* at pp. 1, 2. After that examination was completed and the report of the defense medical expert was produced, Mehall furnished defendants with the reports of Dr. Micciche dated April 11, 2011, and July 18, 2011, and "defendants, for the first time, became aware that [Mehall] returned to Dr. Micciche for treatment and that [Mehall] was advancing a claim for post-traumatic arthritis." *Id.* at p. 2.

In considering the defense request for a supplemental examination to evaluate Mehall's foot injury claim, Judge Mazzoni quoted *Lodolce* for the proposition that an additional examination is allowable "if subsequent discovery reveals that the plaintiff is alleging a new injury since the date of the initial examination or deliberately concealed an injury at the time of the first examination." *Id.* at p. 3 (quoting *Lodolce*, 99 Lacka. Jur. at 57). Judge Mazzoni found that a new injury was alleged by Mehall following his original examination on July 21, 2011, and that "[d]efendants were not aware of this development until after their [Rule 4010 exam] on the lumbar issues and only after [Mehall] tendered Dr. Micciche reports on July 25, 2011." *Id.* at p. 4. Judge Mazzoni noted that Mehall's "failure to seasonably supplement his discovery [h]ad the same 'net effect'" as a litigant "deliberately conceal[ing] an injury at the time of the first examination."

*Id.* at pp. 3-4. Based upon "the exceptional circumstances in *Mehall*, Judge Mazzoni concluded that a second examination limited to Mehall's foot injury would not "be an unreasonable invasion of privacy" and would afford the defense "a fair opportunity to address this new diagnostic development that was first disclosed to defendants late in the discovery process." *Id.* at pp. 4-5.

Unlike the aforementioned cases where additional medical examinations were ordered, an earlier physical examination of DiGiacinto has not been conducted in this case. Consequently, Obelinas and Nivert do no premise their request for multiple examinations upon the lapse of time since the original examination, *see Edelstein, supra,* and *Sperath, supra,* the development of a new injury since the date of the first examination, or the concealment of an injury at the time of the initial examination. *See Mehall, supra.* Rather, they assert, and the discovery master agreed, that the defense has established "good cause" to have "two separate and distinct specialists" evaluate DiGiacinto's "alleged cervical spine injuries" and "his general orthopedic issues involving allegations of bilateral carpal tunnel and left shoulder complaints." (Docket entry no. 32 at pp. 1-2; Docket entry no. 36 at p. 8).

The defense demand for separate examinations by different specialists is based upon the faulty premise that the same medical specialist cannot treat and evaluate a cervical injury and a carpal tunnel condition. Orthopedic surgeons routinely treat carpal tunnel syndrome and perform carpal tunnel surgeries. *See Hansen v. Workers' Compensation Appeal Board (Stout Road Associates)*, 957 A.2d 372,373-374 (Pa. Cmwlth. 2008) ("An orthopedic surgeon diagnosed bilateral carpal tunnel syndrome" and performed a "carpal tunnel decompression in November 2005."); *Olivetti Corp. v. Workmen's Compensation Appeal*

*Board (Robinson)*, 75 Pa. Cmwlth. 584,587-588,462 A.2d 934, 936 (1983) (injured employee was "referred to an orthopedic surgeon and an operation was performed on both wrists for the carpal tunnel syndrome."). Orthopedic surgeons often testify regarding their treatment of carpal tunnel syndrome, including their surgical intervention. *See Beck v. Workers' Compensation Appeal Board (Kellogg Company)*, 2010 WL 9519126, at *1 (Pa. Cmwlth. 2010), *app. denied*, 611 Pa. 628, 23 A.3d 543 (2011); *Leyva v. International Surface Preparation Corp.*, 79 Pa. D. & C. 4th 362, 369 (Phila. Co. 2006). Parties who defend carpal tunnel syndrome claims similarly retain orthopedic surgeons to examine carpal tunnel claimants and to provide testimony on behalf of the defense. *See City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 578 Pa. 207, 211, 851 A.2d 838,840 (2004) (employer presented testimony of orthopedic surgeon who opined that "carpal tunnel syndrome is not a disabling condition."); *Levine v. Travelers Property Casualty Insurance Company*, 69 A.3d 671, 673 (Pa. Super. 2013) (insurer retained an orthopedic surgeon to conduct "an independent medical examination ("IME") to determine if Ms. Levine's carpal tunnel symptoms were causally related to the motor vehicle accident.").

Orthopedic surgeons also diagnose and treat cervical injuries and degenerative disc disease, and perform discectomies for those injuries. *See Kastenbaum v. Workers' Compensation Appeal Board (Teleflex Marine)*, 2013 WL 3946315, at *1 (Pa. Cmwlth. 2013); *Alltell Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Kovalik)*, 2010 WL 9513222, at *1 (Pa. Cmwlth. 2010). Parties defending claims involving degenerative disc disease and discectomies commonly hire orthopedic surgeons to conduct medical examinations on their behalf

and to testify in their defense. *See DePaolo v. Department of Public Welfare*, 865 A.2d 299,303 Pa. Cmwlth. 2005) ("...orthopedic surgeon, who reviewed claimant's medical records and performed an independent medical examination of claimant...testified that there is nothing in the claimant's medical history to suggest that her 1999 injury aggravated or accelerated her degenerative disc disease at the C6-7 level" and "opined that the claimant's 2002 C6-7 cervical discectomy was due to degenerative disc changes."); *Badyrka v. Workers' Compensation Appeal Board (Clarks Summit State Hospital)*, 729 A.2d 182,183-184 (Pa. Cmwlth. 1999)[3]; *Pavonarius v. Workers' Compensation Appeal Board (Samuel Levitt Sheet Metal. Inc.)*, 714 A.2d 1135, 1136 (Pa. Cmwlth. 1990), *app. denied*, 558 Pa. 613, 736 A.2d 606 (1999). Thus, contrary to the defense contention in this case, the injuries and resulting surgeries asserted by DiGiacinto are, in fact, conditions that are treated and procedures that are performed by orthopedic surgeons who commonly testify regarding those issues on behalf of the plaintiff and the defense.

Neurosurgeons likewise treat carpal tunnel syndrome and provide surgical care for that ailment. *See Sauer v. Workers' Compensation Appeal Board (Verizon*

---

3. A Luzerne County orthopedic surgeon, Peter A. Feinstein, M.D., testified on behalf of the employer in *Badyrka*, and opined that the employee's cervical injury had resolved and that the "claimant had no restrictions and was able to return to work." *Badyrka*, 729 A.2d at 184. Dr. Feinstein frequently testifies on behalf of the defense in civil litigation. *See Clifford v. Leonardi*, 61 Pa. D. & C. 4th 13, 16-18 (Lacka. Co. 2003) (Dr. Feinstein verified in discovery responses that in a four year period, he conducted 2,449 medical examinations and provided 856 trial depositions for the defense side of litigation). Dr. Feinstein has identified himself in the past as a local pioneer in endoscopic carpal tunnel release surgery. *See* "New Method Used in Wrist Surgery Procedure," *The Standard-Speaker*, Vol. 124 at p. 22 (July 17, 1990). Dr. Feinstein would presumably be available to conduct the defense examination of DiGiacinto in this matter.

*Pennsylvania, Inc.)*, 26 A.3d 531,534 (Pa. Cmwlth. 2011); *Hackert v. Teachers Insurance and Annuity Association*, 1993 WL 460806, at \*2 (E.D. Pa. 1993), *aff'd*, 31 F.3d 1171 (3d Cir. 1994). Neurosurgeons also treat degenerative disc disease, perform discectomies and offer testimony regarding the same. *See DePaolo*, 865 A.2d at 303; *Frederick v. Action Tire Company*, 744 A.2d 762, 763 (Pa. Super. 1999), *app. denied*, 564 Pa. 711, 764 A.2d 1070 (2000). For that reason, neurosurgeons are regularly hired by parties defending claims involving cervical spine injuries and discectomies. *See, e.g., Roberts v. Workers' Compensation Appeal Board (Thomson Consumer Electronics)*, 2008 WL 9397279, at \*5 (Pa. Cmwlth. 2008); *Kinder Morgan v. United Steel*, 2014 WL 1330032, at \*2 (E.D. Pa. 2014). Therefore, in lieu of retaining an orthopedic surgeon to evaluate DiGiacinto's cervical and carpal tunnel claims, Obelinas and Nivert may opt to secure the services of a neurosurgeon to examine DiGiacinto pursuant to Pa.R.C.P. 4010. *Cf. Stitzell v. York Memorial Osteopathic Hospital*, 754 F. Supp. 1061, 1063 (M.D. Pa. 1991) (noting that hospital staff neurosurgeon's practice "overlapped" with orthopedic surgeons' practices, and stating that "[t]he common areas of practice were lumbar spine surgery, anterior cervical spine surgery and carpal tunnel surgery of the wrist.").

A cervical spine injury and carpal tunnel syndrome are not the sole province of discrete medical specialties, and the defense may retain either an orthopedic surgeon or a neurosurgeon to conduct a single examination of DiGiacinto for those injuries and to testify as an expert witness on behalf of the defense. The mere fact that DiGiacinto may ultimately present the testimony of two orthopedic surgeons, Dr. Stansbury and Dr. Fayyazi, does not justify the inconvenience of two physical examinations

of him by separate physicians hired by the defense. It is not uncommon for one party to present the testimony of more expert witnesses than an opposing party.[4] In accordance with the Pennsylvania Suggested Standard Civil Jury Instructions, the jury in this case should be instructed that the number of witnesses "offered by a party does not, alone, decide the weight of the evidence," and that "[t]he believable testimony of one witness presented by one party may outweigh the testimony of many witnesses presented by another party." Pa. SSJI(Civ.) 5.20 (4th ed); *see also Westinghouse Electric Corp. v. Board of Property Assessment of Allegheny County*, 539 Pa. 453, 464 n. 3, 652 A.2d 1306, 1312 n. 3 (1995) (stating that the fact-finder "is not required to decide an issue in favor of the party having the largest number of witnesses who testify in support of that party's position."); *Pressler v. City of Pittsburgh*, 419 Pa. 440, 447, 214 A.2d 616,620 (1965) (concluding that jurors "do not, or should not, decide cases by counting witnesses on either side and then giving their verdict to the side with the greater number" since "[j]ustice is not a matter of comparable mathematics."). The jurors should also be instructed that they "do not have to accept an expert's opinion just because he or she

---

4. By way of illustration, a motor vehicle accident claimant may submit to a pre-litigation physicial examination at the behest of the claimant's own first-party benefits insurer which provides medical expense coverage. *See Fleming v. CNA Insurance Companies*, 409 Pa. Super. 285, 288-289, 597 A.2d 1206, 1207-1208 (1999) (if the language of the insurance policy requires an insured to submit to a physical examination by a physician of the insurer's choosing, the first-party benefits insurer does not have to establish "good cause" in order to compel the insured to undergo that medical examination). Despite the fact that such a claimant has already been examined by a physician hired by an insurer, [s]he may nevertheless be required to undergo another examination under Rule 4010 after litigation has been commenced. *See Kapp v. Oasis Enterprises, Inc.*, 83 Lacka. Jur. 190, 192 (1982). In that event, the tortfeasor may offer the testimony of the physician who conducted the pre-litigation examination, as well as the physician who performed the subsequent examination under Rule 4010.

is considered an expert in his or her field." Pa. SSJI(Civ.) 4.80 (4th ed.) "The law presumes that the jury will follow the instructions of the court," *Com. v. Arrington*, 2014 WL 783559, at *8 n. 11 (Pa. 2014), and as such, any fear by the defense that the jury will decide the merits of DiGiacinto's claims based upon the number of expert witnesses presented by either side is unwarranted.

Based upon the foregoing, Obelinas and Nivert have not established "good cause" for requiring DiGiacinto to submit to two physical examinations by separate physicians. Accordingly, DiGiacinto's *de novo* appeal will be granted, the special discovery master's order will be reversed, and the defense motion to compel two medical examinations under Rule 4010 will be denied. An appropriate follows.

## ORDER

And now, this 17th day of April, 2014, upon consideration of the *de novo* discovery appeal of plaintiff, Thomas F. DiGiacinto, pursuant to Lacka. R.C.P. 4000.1, the memoranda of law submitted by the parties, and the oral argument of counsel on April 7, 2014, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

1. The *de novo* discovery appeal filed by plaintiff, Thomas F. DiGiacinto, pursuant to Lackawanna County R.C.P. 4000.1 is granted;

2. The special discovery master's order directing plaintiff, Thomas F. DiGiacinto, to submit to two physical examinations by separate physicians is reversed; and

3. The "motion to compel independent medical examinations" filed by defendants, Ralph C. Obelinas and Nivert Metal Supply, Inc., is denied.